51 F.3d 820
 UNITED STATES of America, Plaintiff-Appellee,
v.
Carlos Tapia PONCE, aka Carlos Perez, Ricardo Lopez Mateos,
Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
James Romero McTAGUE, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Hector Tapia ANCHONDO, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Hugo Fernando CASTILLON-ALVAREZ, aka Hugo Fernando
Castillon, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Mauricio MONROY, Defendant-Appellant.
 Nos. 93-50734, 93-50748, 94-50075, 94-50181, and 94-50293.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 5, 1994.
Decided March 27, 1995.
 
 Joseph Abraham, Jr., El Paso, TX (on the briefs), for defendant-appellant Carlos Tapia Ponce.
 Michael Pancer, San Diego, CA, for defendant-appellant James McTague.
 David Z. Chesnoff, Goodman & Chesnoff, Las Vegas, NV, for defendant-appellant Hector Anchondo.
 Marlene Gerdts, Beverly Hills, CA, for defendant-appellant Hugo Castillon-Alvarez.
 Vicki I. Podberesky, Nasatir, Hirsch & Podberesky, Santa Monica, CA, for defendant-appellant Mauricio Monroy.
 James P. Walsh, George S. Cardona, and Ronald L. Cheng (on the briefs), Asst. U.S. Attys., Los Angeles, CA, for plaintiff-appellee.
 Appeals from the United States District Court for the Central District of California.
 Before: FARRIS, POOLE, and KOZINSKI, Circuit Judges.
 PER CURIAM:
 
 
 1
 Ponce, McTague, and Monroy appeal their sentences imposed on remand after this court vacated their original sentences for conspiracy and possession of cocaine with intent to distribute. Anchondo and Castillon appeal their convictions following a trial on similar charges. Castillon also appeals his sentence.
 
 BACKGROUND
 
 2
 On September 28, 1989, law enforcement agents executed a search warrant on a warehouse located in Sylmar, California. Inside, the agents found cardboard boxes containing approximately 21.4 tons of cocaine. With a street value of $6.9 billion, it was the largest known cocaine seizure in world history.
 
 
 3
 Subsequent investigation revealed that Carlos Tapia Ponce, James McTague, and others began transporting large quantities of marijuana from El Paso to Dallas in 1983. The organization moved into the cocaine distribution business around 1985. The cocaine was flown by the Medellin cartel from Colombia to Chihuahua, Mexico, and then stored in Juarez, Mexico.
 
 
 4
 The organization had on its payroll several American employees who worked at the El Paso border crossing. With their assistance, the cocaine was trucked into the United States, where it was stored at several El Paso locations. From El Paso, the cocaine was hidden in secret compartments of tractor-trailers and shipped in multi-ton deliveries to the Sylmar warehouse near Los Angeles. The organization then sold the cocaine to various customers and sent the proceeds to Colombia.
 
 
 5
 Authorities estimate that the organization moved over 250 tons of cocaine between 1987 and 1989. Ledgers seized at the warehouse indicate that during the three-month period from June to September 1989, the Sylmar warehouse received 77 tons of cocaine and handled over $81 million in cash.
 
 
 6
 The organization was highly sophisticated and well equipped. In addition to maintaining border checkpoint surveillance, the organization used technically advanced anti-eavesdropping equipment, mail drops, pagers and cellular phones, and coded ledgers and communications.
 
 
 7
 Ponce was the patriarch of the family smuggling business and oversaw its general operation. He recruited his two sons, Hector Tapia Anchondo and Carlos Tapia Anchondo, as well as his sons-in-law McTague and Mauricio Monroy, and the organization's principal driver, Gilbert Mendoza. Ponce managed the El Paso side of the business, while McTague ran the Los Angeles operation.
 
 
 8
 Ponce, McTague, and Monroy were tried and convicted on all counts in a seven-week trial that ended in November 1990. The district court sentenced Ponce and McTague to life imprisonment. Monroy received a 420-month sentence. We affirmed the convictions, but vacated the sentences and remanded for resentencing. On remand, the district court again sentenced Ponce and McTague to life imprisonment. Monroy was sentenced to 405 months in custody. All three again appeal their sentences.
 
 
 9
 Hugo Castillon and Hector Tapia Anchondo were tried together in late 1992 and convicted on all counts. Anchondo was sentenced to 365 months imprisonment; Castillon received 327 months. Both appeal their convictions. Castillon also appeals his sentence.
 
 DISCUSSION
 I. Ponce, McTague, and Monroy
 
 10
 On April 1, 1993, we vacated Ponce, McTague, and Monroy's original sentences in a memorandum disposition on the ground that the district court had improperly departed upward for the quantity of drugs involved. United States v. Ponce, 990 F.2d 1264 (9th Cir.1993). Following United States v. Martinez, 946 F.2d 100 (9th Cir.1991), we held that the upward departures were improper because the base offense level already reflected the quantity of drugs. We remanded for resentencing.
 
 
 11
 Prior to the November 1989 amendments to the Guidelines, the largest cocaine quantity recognized for sentencing purposes was 50 or more kilograms. U.S.S.G. Sec. 2D1.1 (1988). With a base offense level of 36, neither Ponce and McTague's life sentences nor Monroy's 405-month sentence were available without upward departures. The district court clearly felt that the Guidelines' ranges were too lenient under the circumstances and departed upward on several grounds. Ponce, McTague, and Monroy challenge each of the district court's upward departures.
 
 A. Scope of the Resentencing Proceedings
 
 12
 Ponce and McTague argue that the district court was bound by its earlier criminal history category and role-in-the-offense determinations. Similarly, Monroy contends that the de novo resentencing violated his due process and double jeopardy protections.
 
 
 13
 Where a sentence exceeds the district court's authority, our practice is to vacate the entire sentence and remand for resentencing. United States v. Caterino, 29 F.3d 1390, 1395-96 (9th Cir.1994); see also United States v. Pimentel, 34 F.3d 799, 800 (9th Cir.1994). Subsequent appellate panels "presume that this general practice was followed unless there is clear evidence to the contrary." Caterino, 29 F.3d at 1395. On remand, the district court may consider any matter relevant to the sentencing. Id. (citing United States v. Cornelius, 968 F.2d 703, 705 (8th Cir.1992) (resentencing on remand is de novo)). A district court may not, however, begin anew following a limited remand. Caterino, 29 F.3d at 1394. The propriety of the district court's de novo sentencings on remand therefore turns on whether "the district court's authority was abridged by any express or implied limits in the remand order." Id.
 
 
 14
 The critical language in the memorandum disposition reads: "Martinez compels us to vacate the sentences, because the district court erred in departing from the guidelines based on the quantity of drugs involved. Defendants' sentences should be recalculated accordingly. AFFIRMED, except that the SENTENCES are VACATED AND REMANDED." Had the court sought to limit the scope of the district court's authority on remand, it could easily have done so. Instead, the court stated that the sentences were to be "recalculated." This language does not amount to "clear evidence" of a limited remand. Caterino, 29 F.3d at 1395. The district court did not err in resentencing Ponce and McTague without regard to its previous determinations.
 
 
 15
 Monroy contends that the resentencing violated the Double Jeopardy Clause. This argument was rejected in Caterino. "[A] prisoner 'has no legitimate expectation of finality in the original sentence when he has placed those sentences in issue by direct appeal and has not completed serving a valid sentence.' " Id. at 1397 (quoting United States v. Andersson, 813 F.2d 1450, 1461 (9th Cir.1987)).
 
 
 16
 Monroy also asserts a due process argument. In the context of resentencing, the Due Process Clause prohibits courts from: (1) increasing a sentence as punishment for pursuing a successful appeal; or (2) refusing to credit a defendant for time served pursuant to the original conviction or sentence. See generally North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). Monroy does not cite, nor did we locate, any authority for the proposition that due process is violated where a court reexamines all aspects of a sentence following a successful appeal of a prior sentence and a general remand. We reject Monroy's due process argument.
 
 B. Enhancements for Roles in the Offense
 
 17
 Guidelines Sec. 3B1.1 permits a four-level enhancement if the defendant was an "organizer or leader" of illegal activity. A district court's determination that a defendant was an "organizer or leader" is reviewed for clear error. United States v. Monroe, 943 F.2d 1007, 1019 (9th Cir.1991), cert. denied, 503 U.S. 971, 112 S.Ct. 1585, 118 L.Ed.2d 304 (1992). The district court need not make specific findings of fact in support of an upward role adjustment. United States v. Rigby, 896 F.2d 392 (9th Cir.1990).
 
 1. McTague
 
 18
 In the first sentencing proceeding, the district judge followed the recommendation in the Presentence Report and found that a three-level upward adjustment was warranted under Guidelines Sec. 3B1.1(b) for McTague's role as a "manager or supervisor." On resentencing, however, the court imposed a four-level upward adjustment pursuant to Sec. 3B1.1(a) on the ground that McTague was an "organizer or leader." McTague contends that this characterization of his role was error.[1] According to McTague, his job, in essence, was to "watch over" the Sylmar warehouse; therefore, he was more of a watchman than an organizer or leader.
 
 
 19
 The factors to be considered when determining whether a defendant was an organizer or leader include: the exercise of decisionmaking authority, the nature of the offense and the defendant's participation in the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, and the degree of control and authority exercised over others. U.S.S.G. Sec. 3B1.1, comment. (n.4); see also United States v. Hernandez, 952 F.2d 1110, 1119 (9th Cir.1991), cert. denied, --- U.S. ----, 113 S.Ct. 334, 121 L.Ed.2d 252 (1992); United States v. Sanchez, 908 F.2d 1443, 1448 (9th Cir.1990).
 
 
 20
 The Presentence Report states that McTague was "the sole distributor" in Los Angeles. His responsibilities included:
 
 
 21
 maintenance of inventory and distribution at the Sylmar warehouse, and the task of distributing large quantities of cocaine from the warehouse to various wholesale and retail distribution organizations throughout the Los Angeles area. He was responsible for ledgers in the Sylmar warehouse, reflecting accountability for the money and drugs being transported through the Sylmar operation.
 
 
 22
 On the basis of the seized ledgers, the Presentence Report concluded that McTague had coordinated the distribution of approximately 77 tons of cocaine in the three-month period between June and September 1989. To accomplish this, he worked with and supervised two codefendants, Monroy and Castillon.
 
 
 23
 McTague oversaw the procurement and distribution of colossal quantities of cocaine in the Los Angeles area. See United States v. Avila, 905 F.2d 295, 298-99 (9th Cir.1990) ("organizer or leader" enhancement proper where defendant coordinated the procurement and distribution of cocaine and heroin). He also repeatedly exercised decisionmaking authority and functioned in an organizational role in determining when, where, and to whom the drugs would be sold. See Monroe, 943 F.2d at 1019-20 (enhancement proper where defendant is a decisionmaker and plays an organizational role). Further, he managed two other participants in the conspiracy. See United States v. Barnes, 993 F.2d 680, 685 (9th Cir.1993) (enhancement permissible where defendant, among other things, exercised authority over at least one additional participant), cert. denied, --- U.S. ----, 115 S.Ct. 96, 130 L.Ed.2d 46 (1994). The district court therefore did not clearly err in finding that McTague was an "organizer or leader" in the organization.
 
 2. Monroy
 
 24
 Monroy received a three-level enhancement for being a manager of the cocaine trafficking operation. At oral argument, the government acknowledged in response to questioning that the three-level role enhancement was improper. The record is devoid of evidence that Monroy "exercised some control over others involved in the commission of the offense[s] or was responsible for organizing others for the purpose of carrying out the crime[s]." United States v. Alonso, 48 F.3d 1536, 1545 (9th Cir.1995) (internal quotation omitted). There is therefore no basis for the three-level enhancement for Monroy's role in the offense.
 
 C. Criminal History Categories
 
 25
 Neither Ponce, McTague, nor Monroy had prior convictions. Nevertheless, the district court found that a criminal history category of I underrepresented the extent of their criminal histories. Specifically, the court found that because the evidence indicated that they had engaged in marijuana trafficking prior to the instant offenses, a criminal history category of III more accurately reflected the extent of their past criminal conduct.
 
 
 26
 When fashioning a sentence, the district court may depart upward if "reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes." U.S.S.G. Sec. 4A1.3. A criminal history upward departure is appropriate only where the defendant's past criminal conduct is "significantly more serious" than reflected by the presumptive category. United States v. Singleton, 917 F.2d 411, 412 (9th Cir.1990).
 
 1. McTague
 
 27
 McTague first contends that the district court's category III criminal history finding was improper because the alleged illegal conduct never resulted in convictions. The argument is without merit. The Guidelines specifically provide that an upward departure may be based on past criminal activity that did not result in a conviction. U.S.S.G. Sec. 4A1.3(e); see also United States v. Schubert, 957 F.2d 694 (9th Cir.1992) (upholding departure based on prior, similar adult criminal conduct not resulting in convictions).
 
 
 28
 McTague next challenges the reliability of the evidence of prior drug trafficking. A district court's evaluation of the reliability of evidence is reviewed for an abuse of discretion. Schubert, 957 F.2d at 696. During the trial of Anchondo and Castillon, three of McTague's nephews testified that they had transported large quantities of marijuana for McTague prior to their involvement with cocaine trafficking. These accounts were corroborated by statements made to DEA agents by Carlos Tapia Anchondo, who stated that McTague had been involved in an extensive marijuana distribution operation. McTague offered no contrary evidence. The district court did not abuse its discretion in finding the evidence of McTague's involvement in marijuana trafficking reliable.
 
 
 29
 Finally, McTague argues that assuming arguendo that he had previously engaged in marijuana trafficking, the district court's departure to a category III criminal history was excessive. We reject the argument. The district court based its upward departure on the considerable evidence at trial that McTague had previously participated in an extensive marijuana distribution conspiracy. Given the seriousness and scope of the prior criminal activity, the departure was reasonable "in light of the structure, standards and policies of the Act and Guidelines." United States v. Streit, 962 F.2d 894, 902 (9th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 431, 121 L.Ed.2d 352 (1992) (quoting United States v. Lira-Barraza, 941 F.2d 745, 751 (9th Cir.1991) (en banc)).
 
 2. Ponce
 
 30
 Ponce similarly contends that the record does not support the district court's finding that he previously participated in marijuana trafficking.
 
 
 31
 The testimony relied upon by the government in support of its position that McTague's criminal history enhancement was proper does not reference Ponce. This leaves only the uncorroborated hearsay statements of Carlos Tapia Anchondo. While hearsay statements may be considered at sentencing, due process requires that such statements be corroborated by extrinsic evidence. United States v. Petty, 982 F.2d 1365, 1369 (9th Cir.), amended, 992 F.2d 887, 992 F.2d 1015 (1993). Because the government has failed to point to any evidence corroborating Ponce's alleged participation in marijuana distribution, it was error to calculate his sentence using a category III criminal history. The error does not, however, require setting aside the sentence. With a criminal history category of I and a base offense level of 42, the range under the pre-November 1989 Guidelines is 360 months to life. The record leaves no doubt that the district court would have imposed a life sentence in the absence of the criminal history enhancement. We therefore have no basis to remand for resentencing. Williams v. United States, 503 U.S. 193, 205, 112 S.Ct. 1112, 1120, 117 L.Ed.2d 341 (1992) ("a court of appeals must decide whether the district court would have imposed the same sentence had it not relied upon the invalid factor or factors."); United States v. Rodriguez-Razo, 962 F.2d 1418, 1423-25 (9th Cir.1992).
 
 3. Monroy
 
 32
 As with Ponce, the only evidence of Monroy's alleged involvement in marijuana trafficking consisted of the hearsay statements contained in the DEA report of its interview with Carlos Tapia Anchondo after his arrest in 1989. Although the Presentence Report concluded that Monroy was involved in marijuana trafficking from 1983 through 1985, the district court did not adopt the findings of the presentence report during the sentencing proceeding. Similarly, the government's sentencing memorandum, which the court adopted as the basis for its sentencing determinations, did not discuss Monroy's alleged involvement in marijuana trafficking. There is no evidence in the record corroborating the double-hearsay statements contained in the DEA report. We reverse the district court's upward departure to criminal history category III.
 
 
 33
 The government was twice given the opportunity to present facts supporting an increase in Monroy's criminal category, but failed to do so. We therefore remand for recalculation of Monroy's sentence at criminal history category I.
 
 
 34
 D. Scope, Duration, and Sophistication of the Conspiracy
 
 
 35
 The district court added two points to Ponce, McTague and Monroy's base offense levels. With regard to Ponce and Monroy, the court stated that it was adopting the position of the government's sentencing memorandum, which requested a two-level enhancement for the size and sophistication of the trafficking operation. As for McTague, the district court explained that its upward departure was not based on the quantity of drugs, but in recognition of "the harm to society, the sophisticated nature of the offense, and the long duration of the conspiracy."
 
 
 36
 A district court may depart upward from the Guidelines if aggravating circumstances of a kind "not adequately taken into consideration by the Sentencing Commission" are present. U.S.S.G. Sec. 5K2.0 (Sept. 1988) (quoting 18 U.S.C. Sec. 3443(b)); see also United States v. Shields, 939 F.2d 780 (9th Cir.1991). We review de novo whether the district court had legal authority to depart from the Guidelines. United States v. Martinez-Gonzalez, 962 F.2d 874, 875 (9th Cir.1992).
 
 
 37
 Ponce, McTague, and Monroy contend that the district court's upward departure for the duration of the conspiracy necessarily involved an improper consideration of the quantity of drugs. This argument was rejected in Shields. "Common sense requires the conclusion that duration is not the same thing as quantity. A judge could easily find that a 14-month drug conspiracy is more serious than a single episode of importation." Shields, 939 F.2d at 783.
 
 
 38
 We have also upheld departures for the sophistication of an illegal operation. Martinez-Gonzalez, 962 F.2d at 876. The district court therefore did not err in concluding that the pre-November 1989 Guidelines, which established a base offense level of 36, did not adequately take into consideration the duration and sophistication of defendants' illegal conduct.
 
 
 39
 The next issue is the reasonableness of the departures. Whether a departure was reasonable is reviewed for an abuse of discretion. Id. at 875. Given the considerable length and sophistication of the operation, the district court did not abuse its discretion in making the two-level enhancements. See id. (two-level enhancement for sophistication and duration of illegal activity not unreasonable).
 
 
 40
 Finally, Monroy contends that the district court erred by not explaining the reasons for imposing a sentence at the high end of the applicable Guidelines range. This argument is misplaced, however, because the sentence resulted from upward departures. See Martinez-Gonzalez, 962 F.2d at 879 (no requirement under 18 U.S.C. Sec. 3553(c)(1) to explain sentence where district court departs upward; court need only explain basis for the upward departures).
 
 II. Anchondo and Castillon
 
 41
 Unlike the other defendants, this is the first appeal for Anchondo and Castillon. Both defendants allege numerous errors at trial. Castillon also appeals his sentence.
 
 A. Anchondo's Batson Argument
 
 42
 A district court's findings regarding alleged discrimination in the jury selection process are reviewed for clear error. United States v. Vasquez-Lopez, 22 F.3d 900 (9th Cir.), cert. denied, --- U.S. ----, 115 S.Ct. 239, 130 L.Ed.2d 162 (1994).
 
 
 43
 Anchondo contends that the district court erred by not requiring the prosecutor to give a nondiscriminatory reason for peremptorily challenging "an obviously qualified" African-American prospective juror. Under Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the burden shifts to the challenging party to demonstrate a race-neutral explanation for a peremptory strike only upon establishment of a prima facie case of purposeful discrimination. United States v. De Gross, 960 F.2d 1433, 1442 (9th Cir.1992) (en banc). To establish a prima facie case, a litigant must show that a peremptory challenge was exercised against a member of a constitutionally protected class, and that this fact and other relevant circumstances raise an inference that the challenge was on account of group membership. Id.
 
 
 44
 The disputed peremptory challenge was the government's second. The first juror challenged was white. Three black jurors remained on the panel after the government's second challenge. Following the disputed strike, defense counsel requested a side bar during which he made the Batson objection. When asked to explain the basis for the objection, defense counsel responded that the juror was "totally unobjectionable." The district court then found that Anchondo had failed to state a prima facie case of purposeful discrimination. Nonetheless, the government offered the court its juror evaluations, which were prepared on the basis of questionnaires completed before counsel saw the jurors. The challenged juror had been rated a "B" on an A-B-C scale. The district court did not clearly err in finding that Anchondo had failed to make a prima facie showing of racial discrimination in the jury selection process.
 
 B. Unanimity Instruction
 
 45
 Anchondo was charged with being a "principal administrator" of a continuing criminal enterprise in Count VI of the indictment. To establish Anchondo's guilt, the government was required to show that he acted in concert with at least five or more persons and functioned as an organizer, supervisor, or manager of those people. 21 U.S.C. Sec. 848(b). Anchondo contends that the district court erred by failing to instruct the jury that it had to unanimously agree on the identity of the five or more persons supervised.
 
 
 46
 Because Anchondo did not request the instruction at trial, we review for plain error. United States v. Jerome, 942 F.2d 1328, 1331 (9th Cir.1991). Plain error will be found only where necessary to prevent a miscarriage of justice or to maintain the integrity of the judicial process. United States v. Ortiz-Lopez, 24 F.3d 53, 55 (9th Cir.1994).
 
 
 47
 While instructing the jury, the district court read Count VI of the indictment, which charged Anchondo with acting in concert with McTague, Castillon, Monroy, Mendoza, and Alejandro Herrera. The jury was instructed that to find Anchondo guilty on Count VI, they needed to find that he "was an organizer of these five or more other persons, or occupied a management or supervisory position with respect to these five or more other persons."
 
 
 48
 Anchondo contends that the failure to give a unanimity instruction on the identity of the five supervisees was plain error under Jerome. There, we held that because the defendant could not have legally supervised all of the persons named by the government, a specific unanimity instruction regarding supervisees was required. 942 F.2d at 1331; see also United States v. LeMaux, 994 F.2d 684, 688-89 (9th Cir.1993). But where, as here, the district court gives a general unanimity instruction, a specific unanimity instruction on supervisees is not required in the absence of a genuine possibility of juror confusion. United States v. Garcia, 988 F.2d 965, 969 (9th Cir.1993).
 
 
 49
 Anchondo does not contend that it was legally impossible for him to be the supervisor of all of the persons named in Count VI. The record contains ample evidence upon which the jury could have found that Anchondo supervised each of the persons identified in Count VI. No possibility of jury confusion existed. The general unanimity instruction was adequate.
 
 
 50
 C. Prosecutor's Alleged Reference to Anchondo and
 
 Castillon's Decisions Not to Testify
 
 51
 During her closing argument, the AUSA stated: "But I ask you to look at the various things that the defense attorneys did not show you. Look at the things the defense attorneys did not offer you." Anchondo and Castillon contend that this statement amounted to an improper prosecutorial comment on their decisions not to testify. We reject the contention. The prosecutor's statement was not "manifestly intended to call attention to the defendant's failure to testify, or ... of such character that the jury would naturally and necessarily take it to be a comment on the failure to testify." United States v. Mayans, 17 F.3d 1174, 1185 (9th Cir.1994) (quoting Lincoln v. Sunn, 807 F.2d 805, 809 (9th Cir.1987)). Rather, it was a general reference to Anchondo and Castillon's failure to present exculpatory evidence. See United States v. Lopez-Alvarez, 970 F.2d 583, 595-96 (9th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 504, 121 L.Ed.2d 440 (1992).
 
 D. Alleged Prosecutorial Vouching
 
 52
 Also during closing, in reference to a principal government witness, the AUSA asked rhetorically: "Now, did he lie to you here? No, ladies and gentlemen. He didn't." Anchondo and Castillon argue that the prosecutor impermissibly vouched for Magallanes' credibility. See United States v. Molina, 934 F.2d 1440, 1444 (9th Cir.1991). The argument lacks merit. A review of the transcript reveals that the statement immediately followed the prosecutor's description of Magallanes' admitted perjury at an earlier proceeding. In context, it did not place "the prestige of the government behind [Magallanes' testimony] through personal assurances of [his] veracity...." United States v. Necoechea, 986 F.2d 1273, 1276 (9th Cir.1993).
 
 E. Denial of Castillon's Severance Motions
 
 53
 Castillon made a pretrial motion to sever his trial from Anchondo's and renewed the motion several times during the course of the trial. He argues that the denial of these motions was reversible error.
 
 
 54
 A denial of a severance motion is reviewed for an abuse of discretion. United States v. Tootick, 952 F.2d 1078, 1080 (9th Cir.1991). "Defendants must meet a heavy burden to show such an abuse, and the trial judge's decision will seldom be disturbed." Id.
 
 
 55
 Count I of the superseding indictment charged both Anchondo and Castillon with engaging in a conspiracy to distribute and possess large quantities of cocaine and listed 19 overt acts. Counts II through V charged each defendant with possession of cocaine with intent to distribute on specific dates. Count VI charged Anchondo, but not Castillon, with being a leader or organizer of a continuing criminal enterprise in violation of 21 U.S.C. Sec. 848.
 
 
 56
 Castillon argues that the evidence introduced to demonstrate Anchondo's participation in the alleged continuing criminal enterprise had a "spillover" effect, thereby preventing the jury from "compartmentalizing" the evidence as it related to Counts I through V against him. But Castillon fails to cite any evidence admitted at trial that did not relate to the conspiracy charged in Count I. He has therefore failed to carry his "heavy burden" of showing prejudice. Tootick, 952 F.2d at 1080. The district court did not abuse its discretion in denying Castillon's severance motions.F. Judgment of Acquittal Motion
 
 
 57
 Castillon contends that there was insufficient evidence to support his conviction. Thus, he argues, the trial court erred in denying his motion for a judgment of acquittal following the government's case-in-chief and renewed at the close of all evidence.
 
 
 58
 A defendant is entitled to a judgment of acquittal if no rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. United States v. Shirley, 884 F.2d 1130, 1134 (9th Cir.1989).
 
 
 59
 DEA agents observed Castillon at the Sylmar warehouse the day before and the day of the search during which the cocaine was discovered. Three conspiracy participants, Rene Magallanes, Robert Portelo, and Hector Bustamante, testified to Castillon's prominent role in the cocaine smuggling and distribution operation. Although there was substantial additional evidence against Castillon, this evidence alone was sufficient for a reasonable jury to find Castillon guilty beyond a reasonable doubt on all counts. Castillon's motion for a judgment of acquittal was therefore properly denied.
 
 G. Denial of Castillon's New Trial Motion
 
 60
 Castillon argues that the district court improperly interfered with the jury's deliberative process by: (1) giving a supplemental instruction on the defense of conspiracy withdrawal in response to a written question from the jury; and (2) reading back certain testimony pursuant to the jury's request. On these grounds, Castillon moved for a new trial. The motion was denied. A district court's denial of a motion for a new trial is reviewed for an abuse of discretion. United States v. George, 960 F.2d 97, 101 (9th Cir.1992).
 
 
 61
 On the second day of deliberations, the jury submitted the following note to the court: "Is membership in a conspiracy contiguous from the time a person enters or can membership start and stop for an individual member even though the overall conspiracy continues?" The court, after hearing from counsel, instructed the jury on the defense of conspiracy withdrawal. The court also reminded the jury of their obligation to consider all of the instructions as a whole and admonished them not to single out any one instruction as alone stating the law. According to Castillon, the supplemental instruction effectively told the jury that the court felt that Castillon had at some point participated in the alleged conspiracy. The argument is baseless. The instruction merely clarified the law of conspiracy at the jury's request; it in no way suggested that the court believed Castillon was guilty.
 
 
 62
 Castillon further argues that the withdrawal instruction was confusing and inconsistent with his theory of the case, which was complete innocence. But the instruction in no way precluded the jury from accepting Castillon's theory of the case. Moreover, the instruction was responsive to the jury's question and was an accurate statement of the law. The district court did not abuse its discretion in giving the supplemental instruction.
 
 
 63
 There was an additional note from the jury. It read: "The jury requests ... to see the testimony of Robert Portelo, Ricardo McTague, Victor McTague, Hector Bustamante, Rene Magallanes regarding Hugo Castillon-Alvarez." In response, the court directed the court reporter to read back all portions of these witnesses' testimony, both on direct and cross-examination, that included references to Castillon. The court instructed the jury to determine for themselves whether the reread testimony applied to Castillon.
 
 
 64
 Castillon contends that the court should have let the jury read the transcripts because they had explicitly requested "to see" them. This contention has no merit. The decision to reread the testimony rather than give the jury transcripts was reasonable under the circumstances: the court reporter had not yet completed transcribing all of the testimony. Further, the decision to read the testimony was too inconsequential to have impacted the verdict. United States v. Sandoval, 990 F.2d 481, 486 (9th Cir.) (defendant has "some burden to demonstrate that any error in responding to the jury's communications affected the outcome of the trial."), cert. denied, --- U.S. ----, 114 S.Ct. 218, 126 L.Ed.2d 174 (1993).
 
 
 65
 Castillon further contends that reading back selected portions, rather than the witnesses' entire testimony, had a prejudicial impact on the jury by emphasizing the reread testimony. We reject the argument. Because the court instructed the jury to decide for themselves whether the reread testimony related to Castillon read back references made on cross-examination, no single portion of the testimony was emphasized. See United States v. Nickell, 883 F.2d 824, 829 (9th Cir.1989).
 
 H. Evidentiary Rulings
 
 66
 Castillon also maintains that reversal is required because the district court allowed the government, on several occasions, to present evidence that was more prejudicial than probative in violation of Fed.R.Evid. 403. We reject the argument. See United States v. Chu Kong Yin, 935 F.2d 990, 994 (9th Cir.1991) (verdict will not be disturbed on appeal unless the district court made evidentiary errors that more likely than not affected the outcome).
 
 I. Criminal History Category
 
 67
 As with the other defendants, Castillon had no prior convictions. The Presentence Report therefore recommended a criminal history category of I. The district court, however, sentenced Castillon under a criminal history category of II. According to the district court, category I did not reflect the "seriousness of this defendant's criminal history."
 
 
 68
 When a district court departs upward pursuant to Sec. 4A1.3, it must " 'specify the particular facts of a defendant's history that illustrate why the defendant is unlike other defendants in the same [criminal history] category.' " United States v. Carrillo-Alvarez, 3 F.3d 316, 324 (9th Cir.1993) (quoting United States v. Singleton, 917 F.2d 411, 412 (9th Cir.1990)) (emphasis and brackets in Carrillo-Alvarez ). The findings of the district court must be of sufficient specificity to allow meaningful appellate review of the facts supporting the departure. Carrillo-Alvarez, 3 F.3d at 324; see also United States v. Wells, 878 F.2d 1232, 1233 (9th Cir.1989). Failure to do so requires reversal. Id.
 
 
 69
 At the close of the proceeding, the court pointed to the Presentence Report and "that which has been stated here on the record" as the basis for Castillon's sentence. But neither the presentence report nor the discussion during the sentencing hearing made any specific reference to past criminal activity by Castillon. The district court failed to state the specific facts supporting its decision to increase Castillon's criminal history category from I to II. We must therefore vacate Castillon's sentence and remand for the district court to specify the factual basis for the departure.
 
 J. Seriousness of the Offense
 
 70
 The court also imposed a two-level enhancement "for the seriousness of the offense" when calculating Castillon's sentence. We are satisfied from the record that the court was referring to the duration and sophistication of the operation, but since we must remand, the district court should use the opportunity to state with clarity the reasons for the enhancement. See United States v. Reyes, 8 F.3d 1379, 1382 (9th Cir.1993).
 
 CONCLUSION
 
 71
 Ponce's sentence is AFFIRMED.
 
 
 72
 McTague's sentence is AFFIRMED.
 
 
 73
 Anchondo's conviction is AFFIRMED.
 
 
 74
 Monroy's sentence is AFFIRMED in part and REVERSED in part. We reverse the district court's upward departure to criminal history category III and remand for recalculation of Monroy's sentence at criminal history category I.
 
 
 75
 Castillon's conviction is AFFIRMED. However, Castillon's sentence is VACATED and REMANDED for resentencing. Castillon's remand is not limited.
 
 
 76
 Pursuant to the district court's suggestion, we have no objection to reassignment to a different district judge.
 
 
 
 [1]
 Although Ponce and McTague filed a joint brief, the argument on this issue is necessarily limited to McTague. We previously affirmed the four-level role enhancement for Ponce. United States v. Ponce, et al., 990 F.2d 1264 (9th Cir.1993)