105 F.3d 667
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Patrick W. FINNIGAN and Donald Lee Peterson, Defendants-Appellants.
 Nos. 95-50248, 95-50251.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 9, 1996.
Decided Dec. 31, 1996.
 
 1
 Before: FERNANDEZ and TASHIMA, Circuit Judges, and MERHIGE, Senior District Judge.*
 
 
 2
 MEMORANDUM**
 
 I.
 
 3
 On December 16, 1994, Finnigan and Peterson, along with their co-defendant Gregory J. Gwynn, pleaded guilty to conspiracy in violation of 18 U.S.C. § 371; bank fraud in violation of 18 U.S.C. § 1344, and 2(a)(b); mail fraud in violation of 18 U.S.C. § 1341 and 2(a)(b); and possessing and/or uttering a forged security of an organization in violation of 18 U.S.C. § 513(a) and 2(a)(b).
 
 
 4
 Peterson, Finnigan and their co-conspirator Gwynn were involved in a scheme lasting over 14 years that affected businesses from Tacoma, Washington to San Diego, California, and ultimately defrauded at least 15 separate businesses out of approximately $2 million.
 
 
 5
 Peterson devised the scheme whereby Finnigan would manufacture false identification documents and Peterson would then seek employment as a bookkeeper at a small or medium-size business using his newly created false identity. The conspirators would also supply Peterson with false credentials and references. Telephone numbers would be established for these references so that potential employers could call and these references would be verified. Finnigan and Gwynn would serve as these verifiers. Finnigan would hire assistants to answer calls to verify Peterson's past employment.
 
 
 6
 Once Peterson was established as a bookkeeper at a business, he would obtain access to the business' checkbooks and cash deposits. He would then forge checks of the business and pass these to Finnigan and Gwynn, who would then launder the money. Finnigan designed and implemented the money laundering operation of the conspiracy. Finnigan would use various means to launder the money, including using cash withdrawals from ATMs, wire transfers and purchasing gold coins. These gold coins would shortly thereafter be sold at another shop to obtain cash.
 
 
 7
 In sum, Peterson was the "inside" man who gained access to the books of the victim business, and Finnigan was the "outside" man who specialized in creating the false identification documents and laundering the money.
 
 
 8
 Prior to pleading guilty, Peterson entered into a plea agreement with the United States which contained a stipulated statement of facts and calculations regarding the offense levels applied to the case. According to the terms of the plea agreement, the base offense level of 6 was to be increased by 12 levels for the amount of loss. An additional 2-level increase was to be applied for each of the enhancements for abuse of a position of trust, more than minimal planning and role in the offense, resulting in an adjusted offense level of 24. The plea agreement also provided for a 3-level reduction for acceptance of responsibility, resulting in a potential adjusted offense level of 21.
 
 
 9
 Finnigan also entered into a plea agreement with the United States. He and the United States agreed that his base offense level was 6 and 12-point upward adjustment to the base offense level due to the economic loss from relevant conduct attributable to Finnigan was appropriate. The parties further agreed that a 2-point upward adjustment was appropriate because the offense involved more than minimal planning and more than one victim. The parties further agreed that a 3-point downward adjustment for acceptance of responsibility was appropriate. The parties also agreed that whether a 2-point upward adjustment pursuant to U.S.S.G. § 3B1.1(c) should be applied for Finnigan's role in the offense would be determined by the court at sentencing. At sentencing, the district judge did upwardly adjust Finnigan's offense level under § 3B1.1(c), which resulted in an adjusted offense level of 19.
 
 
 10
 In both plea agreements the United States specifically reserved its right to move for appropriate departures under the Guidelines. Prior to sentencing, the United States moved, with respect to both Finnigan and Peterson, for upward departures based upon the emotional and psychological harm to the victims, the extreme planning and sophistication involved in the offense, and the endangerment to the solvency of the victims involved in the offense.
 
 
 11
 At sentencing, the district court concluded that upward departures on all three grounds were warranted and adopted the government's position with respect to these departures. The district court rejected the government's motion for upward departure based on the underrepresentation of Finnigan's criminal history.
 
 
 12
 On May 15, 1995, Finnigan was sentenced to a term of 85 months, to be followed by a 60-month period of supervised release and ordered to pay restitution of $1,856,177. The district court increased Finnigan's offense level 4 points, from 19 to 23 points, resulting in a sentencing guideline range of 70 to 87 months.[1]
 
 
 13
 The district court also departed upward 4 levels with respect to Peterson, increasing his offense level from 21 points to 25 points. On May 24, 1995, Peterson was sentenced to a term of 105 months, the upper end of the 84 to 105 month guideline range, to be followed by a 60-month period of supervised release and ordered to pay restitution of $1,856,177.[2]
 
 II.
 
 14
 A district court may depart upward from the Guidelines if aggravating circumstances of a kind "not adequately taken into consideration by the Sentencing Commission" are present. U.S.S.G. § 5K2.0 (quoting 18 U.S.C. § 3443(b)); see also United States v. Shields, 939 F.2d 780, 781 (9th Cir.1991).
 
 
 15
 The Supreme Court recently clarified the standard of review of a district court's decision to depart from the applicable guideline range in Koon v. United States, 116 S.Ct. 2035 (1996). There, the Court stated that "[a] district court's decision to depart from the Guidelines ... will in most cases be due substantial deference." Id. at 2046. Accordingly, the Court rejected the argument that departure decisions should be reviewed de novo, and instead held that departures are reviewed for abuse of discretion. Id. at 2047. This standard includes a review to determine if the trial court's discretion was guided by erroneous legal conclusions. Id. at 2048.
 
 
 16
 A. Upward Departure Based on Severe Emotional and Psychological Harm to the Victims
 
 
 17
 Finnigan and Peterson both assert that the district court lacked a sufficient factual basis to conclude that an upward departure based on severe emotional and psychological harm to the victims was warranted. Finnigan and Peterson do not appear to challenge the district court's legal authority to depart upward based on severe emotional and psychological harm to the victims. Nor do they challenge the reasonableness of the extent of the departure. Rather, they argue that the district court was without a sufficient factual basis to conclude that an upward departure for emotional and psychological injury was warranted. Review on this issue is for abuse of discretion. See id. at 2047.
 
 
 18
 The Guidelines authorize departures based on extreme psychological injury:
 
 
 19
 If a victim or victims suffered psychological injury much more serious than that normally resulting from commission of the offense, the court may increase the sentence above the authorized guideline range. The extent of the increase ordinarily should depend on the severity of the psychological injury and the extent to which the injury was intended or knowingly risked.
 
 
 20
 Normally, psychological injury would be sufficiently severe to warrant application of this adjustment only when there is a substantial impairment of the intellectual, psychological, emotional, or behavioral functioning of a victim, when the impairment is likely to be of an extended or continuous duration, and when the impairment manifests itself by physical or psychological symptoms or by changes in behavior patterns. The court should consider the extent to which such harm was likely, given the nature of the defendant's conduct.
 
 
 21
 U.S.S.G. § 5K2.3; see also United States v. Chatlin, 51 F.3d 869, 873-74 (9th Cir.1995).
 
 
 22
 The United States bears the burden of showing that the victims in this case suffered psychological harm greater than that normally resulting from the offenses to which Finnigan and Peterson pled guilty. See Chatlin, 51 F.3d at 874. While "[t]here is no hard and fast rule establishing the type and quantum of evidence sufficient to meet this burden," expert testimony is not required. Id.
 
 
 23
 In this case the district court received evidence in the form of letters from various victims as well as the report of the probation officer which summarized his interviews with the victims. These letters and interviews revealed that the fraud perpetrated by Finnigan and Peterson had caused a range of stress, depression, and stress-related physical ailments among the victims. One victim, Harold Howard, was forced to sell his business when the fraud of Finnigan and Peterson forced it into bankruptcy. Howard stated in his letter to the district court that the ordeal had caused "months of depression." Another victim, Richard Halderman, Jr., has been taking medication to control his depression. Other victims also related that the emotional depression and stress from the fraud had affected their lives. In addition to depression and stress, some victims suffered physical ailments. Ralph Borelli suffered the stress-related ailments of an ulcer and irritable bowel syndrome. One victim, James Beauchamp, related to the probation officer that his father suffered a heart attack due to the stress the fraud caused.[3]
 
 
 24
 In light of the evidence suggesting that one victim suffered depression so extensive, an ulcer and irritable bowel syndrome, that it was required to be medicated, as well as the evidence suggesting that a man suffered a heart attack as a result of the fraud in this case, the Court concludes that the district court did not abuse its discretion in determining that a sufficient factual basis existed to justify an upward departure based on extreme psychological and emotional injury to the victims.
 
 
 25
 B. Upward Departure Based on Meticulous Planning and Sophistication in the Execution of the Scheme
 
 
 26
 Finnigan asserts that the district court did not have a sufficient factual basis to conclude that an upward departure based on meticulous planning and sophistication in the execution of the scheme was warranted. Finnigan does not challenge the district court's legal authority to depart upward based on meticulous planning and sophistication in the execution of the scheme or the reasonableness of the extent of the departure. Rather, he argues that the district court was without a sufficient factual basis to conclude that an upward departure on this basis was warranted. Review on this issue is for abuse of discretion. Koon, 116 S.Ct. at 2047.
 
 
 27
 Duration and sophistication of an illegal operation is a basis for an upward departure. United States v. Ponce, 51 F.3d 820, 829 (9th Cir.1995). In this case Finnigan was involved in a fourteen year scheme where he repeatedly defrauded at least fifteen small-and medium-sized businesses by placing his associate, Peterson, as a bookkeeper in those businesses with the aid of false resumes and false references (Finnigan served as a false reference). Finnigan then forged checks of these businesses, and falsified bank statements of these businesses to conceal the false checks. Finnigan also opened numerous bank accounts with false names and bought and sold gold coins with wire transfers and certified checks in order to launder the proceeds of the frauds. The district court did not abuse its discretion in determining that there was a sufficient factual basis to depart upwards in Finnigan's sentence based on the sophistication of the scheme.
 
 
 28
 C. Upward Departure Based on the Knowing Endangerment of the Solvency of One or More of the Victims
 
 
 29
 Finnigan asserts that the district court was without a sufficient factual basis to conclude that an upward departure based on the knowing endangerment of the solvency of one or more of the victims was warranted. Review on this issue is for abuse of discretion. Koon, 116 S.Ct. at 2047.
 
 
 30
 Sentencing Guideline § 2F1.1, commentary note 10(f) states that the case in which the "the offense involved the knowing endangerment of the solvency of one or more victims" is an example of those cases where an upward departure may be warranted in order to fully capture the harmfulness and seriousness of the defendant's conduct. U.S.S.G. § 2F1.1, commentary note 10(f).
 
 
 31
 The district court had evidence before it in the form of letters from the victims as well as the report of the probation officer who had interviewed the victims. One victim, Harold Howard, wrote the district court that he was forced to sell his business when the fraud of Finnigan and Peterson forced it into bankruptcy. Letters from other victims, including J.D. Beauchamp, Richard Halderman, Jr. and Carl Lambert, related to the district court that the fraud had placed their businesses on the brink of bankruptcy. The district court also had evidence that Finnigan knew of the size and nature of the businesses he defrauded as well as the amounts of money extracted from these businesses. It was not an abuse of discretion for the district court to determine that a sufficient factual basis existed to warrant an upward departure in Finnigan's sentence based on the knowing endangerment of the solvency of the victims.
 
 
 32
 D. Adjustment as an "Organizer, Leader, Manager, or Supervisor" Under Guideline § 3B1.1
 
 
 33
 Finnigan asserts that when calculating the sentence under the Guidelines, the district court improperly adjusted the offense level up two levels because Finnigan was an "organizer, leader, manager, or supervisor" within the meaning of Guideline § 3B1.1(c).
 
 
 34
 This Court reviews the district court's factual findings supporting application of the Sentencing Guidelines for clear error, and the district court's interpretation of the Guidelines themselves de novo. United States v. Buenrostro-Torres, 24 F.3d 1173, 1174 (9th Cir.1994) (per curiam). The district court's conclusion that Finnigan was an "organizer, leader, manager, or supervisor" is reviewed for clear error. Ponce, 51 F.3d at 826. The district court need not make specific findings of fact in support of an upward role adjustment. Id.
 
 
 35
 The Sentencing Guidelines provide for a two-level upward adjustment "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity" involving less than five participants. U.S.S.G. § 3B1.1(c). The adjustment requires that the defendant supervised or otherwise exercised control over other participants. Ponce, 51 F.3d at 827. In this case there is no evidence in the record to suggest that Finnigan supervised or controlled either Peterson or Gwynn. Accordingly, it was improper for the district court to upwardly adjust Finnigan's sentence on this basis.
 
 III.
 
 36
 The Court AFFIRMS the sentence imposed by the district court on Donald Lee Peterson. The Court REVERSES the upward adjustment imposed on Patrick W. Finnigan on the basis that he was an "organizer, leader, manager, or supervisor" within the meaning of U.S.S.G. § 3B1.1(c) and REMANDS Finnigan's sentencing only for the district court's reconsideration of whether Finnigan had an aggravating role under U.S.S.G. § 3B1.1 and resentencing after the court has made that determination.
 
 
 
 *
 The Honorable Robert R. Merhige, Jr., Senior United States District Judge for the Eastern District of Virginia, sitting by designation
 
 
 **
 This disposition is not suitable for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Absent any upward departures, Finnigan's sentencing guideline range would have been 46 to 57 months
 
 
 [2]
 Absent any upward departures, Peterson's sentencing guideline range would have been 51 to 71 months
 
 
 [3]
 Finnigan and Peterson note that Beauchamp's father had prior heart trouble