Dissent by Judge NGUYEN
OPINION
O’SCANNLAIN, Circuit Judge:
We are asked to review sentences imposed for violations of the Migratory Bird Treaty Act.
I
Douglas Vance Crooked Arm and Kenneth G. Shane appeal their felony sentences for conspiring “to kill, transport, offer for sale, and sell migratory birds, including bald and golden eagles” in violation of the Migratory Bird Treaty Act (“MBTA”), 16 U.S.C. §§ 703(a), 707(b), and 18 U.S.C. § 371. Crooked Arm and Shane were the subjects of a sting operation conducted by United States Fish & Wildlife Service agents as part of “Operation Hanging Rock,” an investigation into the illegal sale of migratory bird feathers. Over the course of seven months, undercover agents posed as buyers seeking to purchase fans made from migratory bird feathers from Crooked Arm and Shane before executing search warrants against them. United States v. Vance Crooked Arm (Crooked Arm I), 788 F.3d 1065, 1068-69 (9th Cir. 2015).
In February 2013, a grand jury indicted Crooked Arm and Shane on foür criminal counts. Count I alleged a conspiracy “to kill, transport, offer for sale, and sell migratory birds, including bald and golden eagles,” in violation of 16 U.S.C. §§ 703(a), 707(b), and 18 U.S.C. § 371. It also alleged that Crooked Arm and Shane committed *1067 one or more of the following acts in furtherance of the conspiracy:
1. Crooked Arm “placed deer carcasses on the land in order to attract and capture birds of prey, including eagles and hawks.”
2. Crooked Arm and Shane “sold a golden eagle feather fan for $1,500.”
3. Crooked Arm and Shane “offered to sell a magpie feather fan for $800.”
4. Crooked Arm and Shane “offered to sell a bald eagle feather fan, and received a down payment of $500.”
5. Crooked Arm “offered to sell a winter hawk tail fan for $500.”
6. Crooked Arm “offered to sell a bald eagle tail fan for $1,000.”
Count II alleged that Crooked Arm and Shane knowingly sold parts of a golden eagle for $1,500; Count III alleged that Crooked Arm and Shane offered to sell parts of á magpie for $800; and Count IV alleged that Crooked Arm and Shane knowingly offered to sell parts of a bald eagle for $1,000, all in violation of 16 U.S.C. §§ 703, 707(b), and 18 U.S.C. § 2.
Crooked Arm and Shane filed a motion to dismiss the indictment for failure to state a felony claim, contending that their conduct in selling parts of birds was a misdemeanor only. The district court denied this motion, ruling that § 707(b) does not distinguish between the sale of whole birds and bird parts and thus the indictment properly charged felony violations.
Subsequently, the defendants entered conditional plea agreements by which they pled guilty to Count I and Count II, while reserving their right to appeal the district court’s denial of their motion to dismiss. At the plea colloquy, the district court satisfied itself that Crooked Arm’s and Shane’s pleas were knowing and voluntary, and that they understood the nature of the charges against them and the consequences of their pleas. In addition to their general pleas of guilty to Count I and Count II, Crooked Arm and Shane specifically admitted to selling bird feathers, and Crooked Arm also admitted to dropping off a deer carcass in the hills “for the animals and the birds to eat.”
After being sentenced to probation, Crooked Arm and Shane appealed the district court’s denial of their motion to dismiss. Thus, in Crooked Arm I, Crooked Arm and Shane challenged their convictions by arguing that the sale of bird feathers was a misdemeanor under § 707. This court agreed, holding that the MBTA makes a distinction between birds and parts of birds. Crooked Arm I, 788 F.3d at 1073-75. We vacated their felony convictions for selling parts of a golden eagle (Count II) but affirmed their felony convictions for conspiracy to violate § 703(a) (Count I), through the killing, transporting, offering for sale, or selling of migratory birds. Recognizing that having one felony conviction instead of two could impact the sentence for Count I, we vacated the sentences for both counts and remanded for resentencing. Id. at 1072, 1080. On remand, the district court again imposed felony sentences for their convictions under Count I, sentencing each to one year of probation with credit for time served. Crooked Arm and Shane now contend that they admitted only to misdemeanor conduct and cannot be sentenced as felons, an argument they cast as an Apprendi claim.
II
A
While Crooked Arm and Shane challenge their sentences in this appeal, the core of their claim actually appears to be a challenge to their felony convictions — the logical predicate of being sentenced as a *1068 felon is conviction of a felony.[1] Yet, this court has already resolved any challenge to their felony convictions in Crooked Arm I. We held that Count I properly charged a felony offense, and we affirmed their Count I felony convictions. Id. at 1071-72, 1080.
Crooked Arm and Shane point to language in Crooked Arm I stating that “Count I clearly charge[d] in part a statutory felony,” id. at 1071-72 (emphasis added), and use this to argue that their convictions were not felonies. Yet, such selective quotation is a misreading of our opinion. At least six other times in Crooked Arm /, we stated that Count I charged a felony without including the qualifying language of “in part.”[2] And, in context, we explained:
[E]ven if Defendants were right that sale of eagle feathers is only a misdemeanor, Count I clearly charge[d] in part a statutory felony ... because [it] charge[d] a conspiracy to “kill, transport, offer for sale, and sell migratory birds, including bald and golden eagles,” conduct that falls within the MBTA’s felony provisions. And the overt acts alleged included placing deer carcasses to attract birds of prey.
Id. at 1071-72. Thus, “in part” makes it clear that even iffhe sale of feathers might not amount to a felony, “placing deer carcasses to attract birds of prey” did support felony convictions.[3] Id. And we upheld these convictions in our disposition. Id. at 1080.
B
Crooked Arm and Shane now contend that they admitted only to selling bird feathers during the plea colloquy, and by implication they did not admit to “placing deer carcasses to attract birds of prey,” the overt act supporting felony charges upon which Crooked Arm I relied. Id. at 1072. Thus, they argue that they only pled guilty to conduct that constituted a misdemeanor. Yet, to the extent that Crooked Arm and Shane are challenging the adequacy of their pleas to support felony convictions (and thus felony sentences), this is also foreclosed by Crooked Arm I.
Indeed, Crooked Arm and Shane presented the very same arguments in supplemental briefing in Crooked Arm I. They specifically contended that Count I charged both felony and misdemeanor violations and that based on their pleas, their convictions were for misdemeanors only. *1069 And they raised the Apprendi point that they make now.
Nonetheless, we held that “the record before us d[id] not permit a conclusion that Defendants’ pleas were not knowing and voluntary without adequate factual basis.” Id. at 1072 n.5. Alternatively, we explained that Crooked Arm and Shane “waived” any challenge to the adequacy of their pleas by not raising this claim before the district court or in their opening brief before 'Our court. Id. Thus, we upheld their felony convictions. Id. at 1080.
C
Under law of the case, we are precluded from reconsidering these issues. See United States v. Alexander, 106 F.3d 874, 876 (9th Cir. 1997). Thus, we will not reevaluate Crooked Arm and Shane’s claims that the government needed to obtain a specific admission from them during the plea colloquy in order for them to be convicted (and sentenced) as felons. Defendants cannot relitigate the adequacy of their pleas by resurrecting them in the guise of a sentencing claim.
The dissent argues that law of the case does not apply, citing our decision in United States v. Caterino, 29 F.3d 1390, 1395-96 (9th Cir. 1994) overruled on other grounds by Witte v. United States, 515 U.S. 389, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995). Caterino, however, involved a situation where we held that a defendant was free to raise an argument on remand for resentencing which we had found waived in the initial appeal. Id.
Unlike Caterino, the problem here is not that the district court merely failed to address the argument before the first appeal, but that our decision on the merits of the plea agreement forecloses further review. If Crooked Arm I had merely held that Crooked Arm and Shane had waived their ability to challenge the adequacy of the pleas, Caterino might be on point. But we also rejected Crooked Arm and Shane’s arguments on their face. See Crooked Arm I, 788 F.3d at 1072 n.5. It would be improper to reexamine them now.
Further, in Caterino there was no challenge to the underlying conviction. Instead, the question was a pure sentencing claim — whether the defendant’s consecutive sentences violated the Double Jeopardy clause. See 29 F.3d at 1396. The dissent is correct that “[o]n remand, the district court generally should be free to consider any matters relevant to sentencing, even those that may not have been raised at the first sentencing hearing, as if it were sentencing de novo.” United States v. Matthews, 278 F.3d 880, 885-86 (9th Cir. 2002) (citing United States v. Ponce, 51 F.3d 820, 826 (9th Cir. 1995)). But Crooked Arm and Shane’s claims about the adequacy of the pleas supporting their felony convictions are not sentencing issues.
D
Indeed, because we affirmed Crooked Arm’s and Shane’s felony convictions and vacated only their sentences, the district court was precluded from evaluating the adequacy of their pleas or their convictions. Such analysis fell outside the scope of the remand. See Mendez-Gutierrez v. Gonzales, 444 F.3d 1168, 1172-73 (9th Cir. 2006) (collecting cases).
E
Finally, even if one accepts Crooked Arm and Shane’s contention that they did not realize that they were pleading guilty to felony conduct (apart from the sale of feathers), after this court upheld their felony convictions in Crooked Arm I, the district court offered them a chance to withdraw their guilty pleas on remand. Regardless of whether the district court *1070 had the authority to do so, if Crooked Arm and Shane did not want to be sentenced as felons, they should have tried to withdraw their pleas. Cf. United States v. Broce, 488 U.S. 563, 571, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989). In the wake of Crooked Arm I, to claim that they did not understand that they were pleading guilty to a felony (or would be sentenced as felons) is simply unbelievable.
Ill
In sum, because Crooked Arm I disposes of their arguments, Crooked Arm’s and Shane’s challenges to their felony sentences fail. We express no opinion whatsoever on the merits of their Apprendi claim.
AFFIRMED.

. Although Crooked Arm and Shane claim that they are not challenging their convictions, this is the essence of their dispute. Contrary to the dissent’s suggestion, it would be absurd to affirm Crooked Arm's and Shane’s felony convictions but find their felony sentences improper on the basis that the relevant crimes were only misdemeanors. If one is convicted of first-degree murder, it would be bizarre to claim that he can be sentenced only for manslaughter. Notably, Crooked Arm and Shane do not claim that the district court improperly calculated their Guidelines’ range or bring similar sentencing claims.

. See id. at 1068 (“We conclude ... that ... Count I ... charges a felony”), 1071 (“[T]his [C]ount [I] plainly charged a felony”), 1072 (“The substantive MBTA offense ... makes Count I a felony charge”) ("Count I ... charged a felony offense”), 1073 ("Count I charged a felony”), 1080 (“Count I charged a felony”).

.Contrary to the dissent, it is not undisputed that Crooked Arm and Shane admitted only to misdemeanor conduct. At the plea hearing, when the district court asked Crooked Arm why he was guilty, Crooked Arm explained that he "had a deer carcass in the back of [his] truck,” which he took “out in the hills and dropped ... off for the animals and birds to eat.”