UNITED STATES of America, Plaintiff–Appellee,

v.

William A. ROBERTS, Defendant–Appellant.

No. 92–16660.

United States Court of Appeals, Ninth Circuit.

Submitted Aug. 13, 1993.*

Decided Sept. 16, 1993.

* The panel finds this case appropriate for submission without argument pursuant to 9th Cir.R. 34–4 and Fed.R.App.P. 34(a).

William A. Roberts, pro se.

Bradford C. Lewis, Asst. U.S. Atty., Sacramento, CA, for plaintiff-appellee.

Before SNEED, POOLE, and TROTT, Circuit Judges.

SNEED, Circuit Judge:

William Roberts ("Roberts") appeals pro se the denial of his 28 U.S.C. § 2255 motion. The primary issue is whether the district court violated Fed.R.Crim.P. 11 when it failed to advise Roberts of a term of supervised release at his plea hearing. We hold it did and vacate Roberts's sentence and remand to the district court with instructions.

## I.

### FACTS AND PRIOR PROCEEDINGS

Roberts owned Gemini Chemical, a chemical supply company, and was involved in buying and selling large quantities of precursor chemicals, as well as manufacturing and distributing the finished methamphetamine. On November 21, 1988, pursuant to a plea agreement, Roberts pled guilty to 21 U.S.C. § 846, conspiracy to manufacture and distribute methamphetamine in violation of 21 U.S.C. § 841(a). The charged conspiracy ran from July 23, 1987 to June 6, 1988. The plea agreement said the government would recommend that the court reduce Roberts's sentence by half if he cooperated with the government against others involved in manufacturing and distributing methamphetamine. The plea agreement also said if Roberts disobeyed the law—to be determined by a "probable cause" standard of proof—the agreement would be void.

At the plea hearing, the judge said Roberts would be sentenced under the "old law" because at that time the Ninth Circuit had held the Sentencing Guidelines to be unconstitutional and the Supreme Court had not yet decided the issue. The judge told Roberts the maximum penalty was twenty years. He did not say anything about a term of supervised release.

On February 21, 1989, Roberts was sentenced. By this time, the Supreme Court had decided *Mistretta v. United States,* 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989), which held the Sentencing Guidelines were constitutional, and Roberts was sentenced under the Guidelines. The report set forth a range of thirty years to life pursuant to the Sentencing Guidelines, so, under U.S.S.G. § 5G1.1(a), Roberts was sentenced to the statutory maximum of twenty years. The judge also imposed a mandatory three year term of supervised release under the Guidelines. United States Sentencing Commission, *Guidelines Manual,* § 5D3.1(a) (Oct. 1988). The Assistant U.S. Attorney ("AUSA") told the judge the government would ask that Roberts's sentence be reduced pursuant to the plea agreement "at the end of his cooperation."

In October 1988, Roberts began cooperating with state officers by making undercover purchases and sales of methamphetamine precursor chemicals. Beginning in March 1989, the agents began to receive information from informants and Roberts's employees that he was continuing to buy and sell precursor chemicals and methamphetamine for his own profit without the government's knowledge. Based on the information, the AUSA decided Roberts had broken the law and breached the agreement, and she did not move the court for a reduced sentence.

Roberts filed several motions challenging his conviction, including a motion to vacate pursuant to 28 U.S.C. § 2255. The district court denied Roberts's § 2255 motion, his motion for an evidentiary hearing, and his

other motions.[1] He filed a timely notice of appeal.

## II.

## JURISDICTION AND STANDARDS OF REVIEW

■ The district court had jurisdiction under 18 U.S.C. § 3231 and 28 U.S.C. § 2255. We have jurisdiction under 28 U.S.C. § 2255 and 28 U.S.C. § 1291. The decision whether to grant or deny a petition for habeas corpus is reviewed *de novo. Adams v. Peterson,* 968 F.2d 835, 843 (9th Cir.1992) (en banc). Findings of fact are reviewed for clear error. *Thomas v. Brewer,* 923 F.2d 1361, 1364 (9th Cir.1991).

## III.

## DISCUSSION

A. *Violation of Fed.R.Crim.P. 11.*

■ The voluntariness of a guilty plea is subject to *de novo* review. *United States v. Signori,* 844 F.2d 635, 638 (9th Cir.1988). Before accepting a guilty plea, the lower court judge must speak personally to the defendant to ensure his plea is voluntary. Fed.R.Crim.P. 11(d). Roberts argues his guilty plea was not voluntary because the court: 1) told him he would be sentenced under the "old law," not the Sentencing Guidelines, 2) failed to tell him he would not be eligible for parole, and 3) gave him a potentially longer sentence than the one he was advised of at his plea hearing.

1. *The judge was not obligated to sentence him under pre-Guidelines law.*

■ The first contention fails. The Sentencing Guidelines apply retroactively to guilty pleas, such as this one, which were entered in the "window period" between our decision suspending the Guidelines and the Supreme Court's holding in *Mistretta* that the Guidelines were constitutional. *United States v. Ramos,* 923 F.2d 1346, 1358 (9th Cir.1991). The Guidelines went into effect on November 11, 1987 and apply to conspiracies, such as this one, that ended after that date. *United States v. Kohl,* 972 F.2d 294, 298 (9th Cir.1992). The version of Rule 11 in effect at Roberts's November 21, 1988 plea hearing did not obligate the court to tell Roberts about the Sentencing Guidelines. *Ramos,* 923 F.2d at 1357. That the judge said he would be sentenced under the "old law" had no effect. *United States v. Carey,* 884 F.2d 547, 548 (11th Cir.1989), *cert. denied,* 494 U.S. 1067, 110 S.Ct. 1786, 108 L.Ed.2d 787 (1990).

2. *Ineligibility for parole.*

■ The judge did not violate Rule 11 by failing to advise Roberts that he would be ineligible for parole. Rule 11 does not require the trial court to notify a defendant of parole eligibility before accepting his guilty plea. *United States v. Sanclemente–Bejarano,* 861 F.2d 206, 209 (9th Cir.1988) (per curiam).

3. *Failure to discuss supervised release.*[2]

■ Rule 11 requires that the judge advise the defendant of the "maximum possible penalty" before accepting his guilty plea. Fed.R.Crim.P. 11(c)(1). Here, the judge violated Rule 11 because Roberts received a potentially longer sentence than the maximum he was advised of. At his November 21, 1988 plea hearing, the judge told Roberts that he faced a statutory maximum sentence of twenty years, a $1 million fine, and a

---

**1.** All the issues raised in his motions but not specifically discussed lack merit.

**2.** The government contends this issue was not raised below. However, Roberts did take issue with the magistrate's finding that "the Rule 11 violation movant has raised is immaterial due to movant having been informed of the maximum sentence." C.R. 95 at 1. He also complained that imposing the term of supervised release violated Rule 11. C.R. 58 at 3. Even if this issue was not raised sufficiently below, Roberts can

now raise it if it is purely a question of law, which is not dependent on the factual record, *United States v. Barnett,* 935 F.2d 178, 180 (9th Cir.1991), and if the opposing side does not suffer prejudice as a result, *United States v. Flores–Payon,* 942 F.2d 556, 558 (9th Cir.1991). Whether a Rule 11 violation occurred because of the judge's failure to discuss the term of supervised release at Roberts's plea hearing is purely a legal question, and we do not think the government will suffer any prejudice.

mandatory penalty assessment of $50. 21 U.S.C. § 841(b)(1)(C). The judge mentioned nothing about supervised release. At sentencing, Roberts received the twenty year maximum plus a three year term of supervised release pursuant to the Sentencing Guidelines. C.R. 35 at 20; U.S.S.G. §§ 5D3.1(a), 5D3.2(b)(1). If Roberts violates the conditions of his supervised release, the court may revoke his supervised release and send him back to prison for up to three more years. 18 U.S.C. § 3583(e)(3). Thus, Roberts's maximum sentence is at least twenty-three years, not twenty years. Because of the term of supervised release, Roberts received a potentially longer sentence than he was apprised of at his plea hearing.

If the defendant receives a potentially longer sentence than the maximum he was told, the failure to inform him of the supervised release term affects his "substantial rights" and is not harmless error. Fed. R.Crim.P. 11(h); *Rodriguera v. United States*, 954 F.2d 1465, 1469 (9th Cir.1992) (no harmless error where defendant was advised maximum was forty years but received eight years in prison plus ten years supervised release which could potentially be extended to life); *United States v. Sanclemente–Bejarano*, 861 F.2d 206, 209–10 (9th Cir.1988) (harmless error where defendant was advised maximum sentence was life imprisonment and received fifteen year sentence and five year term of supervised release); *United States v. Sharon*, 812 F.2d 1233, 1234 (9th Cir.1987) (not harmless error where defen-

dant was advised maximum was twenty-one years and he received ten year term and ten years of special parole because liberty could be restricted for well over twenty-one years).

The government argues that the version of Rule 11 in effect at the time of Roberts's plea hearing did not require the judge to discuss supervised release under the Guidelines. This is probably true.[3] The government further contends the judge was not obligated to discuss *statutory* supervised release. This is also true.[4] However, Rule 11 still mandates that the judge tell the defendant the "maximum possible penalty." The defendant should not receive a sentence longer than the one discussed at the plea hearing.

■ The government also argues that the plea agreement mentioned a term of supervised release, so Roberts's plea was voluntary, and any failure to mention it in open court was harmless error. However, the plea agreement simply listed the statutory maximum penalties for all the counts in the indictment. Supervised release was mentioned as part of the maximum statutory penalty for violating 21 U.S.C. § 841(a)(1)—a crime that Roberts did not plead guilty to.

In fact, we take the Rule 11 mandate quite literally. In *Sanclemente–Bejarano*, 861 F.2d at 208, the judge at the plea hearing asked the defense counsel if there was a supervised release term and she said "Yes.... According to the new [law], there should be five years supervised release. At

---

**3.** As previously stated, the judge was not obligated to discuss the Guidelines at that time. *Ramos*, 923 F.2d at 1357. However, the version of Rule 11 in effect at the plea hearing required the judge to discuss a "term of supervised release." Fed.R.Crim.P. 11(c)(1) (1988). The government contends that these words refer only to *statutory* supervised release, not supervised release imposed under the Guidelines. The plain words of Rule 11 make no such distinction, although, with the benefit of both hindsight and legislative history, the government may be right.

**4.** Roberts pled guilty only to conspiracy under 21 U.S.C. § 846. Until November 18, 1988, a conspirator was *not* subject to the mandatory term of supervised release contained in the underlying statute—in Roberts's case, 21 U.S.C. § 841(b)(1)(C). *Bifulco v. United States*, 447 U.S. 381, 401, 100 S.Ct. 2247, 2259, 65 L.Ed.2d 205 (1980). However, effective November 18,

1988—three days before Roberts's plea hearing—the conspiracy statute was amended so conspirators would get the same penalties, including § 841's mandatory term of supervised release, as do people who commit the underlying offense. Anti–Drug Abuse Act of 1988, Pub.L. No. 100–690 § 6470(a), 102 Stat. 4181, 4377. Nonetheless, we hold that the amended version of conspiracy statute should apply only to offenses committed after its effective date. *United States v. Moon*, 926 F.2d 204, 210 (2d Cir.1991); *United States v. Curry*, 902 F.2d 912, 917 (11th Cir.), *cert. denied*, 498 U.S. 1015, 111 S.Ct. 588, 112 L.Ed.2d 592 (1990), *and cert. denied*, 498 U.S. 1091, 111 S.Ct. 973, 112 L.Ed.2d 1059 (1991). If we were to apply the amended version of § 846 to offenses committed before its effective date, such as Roberts's, it would violate the Ex Post Facto Clause of the Constitution. *Curry*, 902 F.2d at 917 n. 5.

least five years in addition to the term of imprisonment, if there is no prior conviction." *Id.* at 208. We held this exchange did not satisfy Rule 11 because "[t]he court did not inform [defendant] of the provision, nor did it ask him if he understood the meaning of supervised release or its effect." *Id.* at 210.

Here, the judge failed to say anything at all about the supervised release term at the plea hearing. The Rule 11 violation arises not from the fault of the district judge, but from an awkward contradiction in the law— the Guidelines required the judge to impose a term of supervised release, while Rule 11 required the judge to impose a sentence not exceeding the "maximum possible penalty" discussed at the plea hearing. In this situation, Rule 11 trumps the Guidelines. *United States v. Sharp,* 883 F.2d 829, 831 (9th Cir. 1989). Thus, we remand this case to the district court and instruct the judge either to delete the three year term of supervised release from the sentence or allow Roberts to replead.

B. *The government did not breach the plea agreement.*

 Whether a plea agreement has been violated is a question of fact for the district court and is reviewed for clear error. *United States v. Sutton,* 794 F.2d 1415, 1423 (9th Cir.1986). The AUSA properly refrained from asking for a sentence reduction because Roberts breached the plea agreement by disobeying the law during the course of his cooperation. The plea agreement stated that whether the defendant broke the law would be assessed under a probable cause standard. Probable cause to arrest a person exists when officers have reasonably trustworthy information that warrants a reasonably cautious person to believe that an offense has been committed. *United States v. Dunn,* 946 F.2d 615, 619 (9th Cir. 1991). Probable cause is assessed from the totality of the circumstances. *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983).

The AUSA had probable cause to believe Roberts was violating the law by continuing to sell precursor chemicals and finished methamphetamine on the sly and for his own profit while he was cooperating with the government. First, an informer tipped off an officer that Roberts was selling methamphetamine to Norman Pine and Sherri Keller, known customers of Roberts. Second, Waymon Cooper, an employee of Roberts, called six to ten times to report Roberts was selling chemicals and drugs. Third, Agent Prose was driving in the car with Roberts when Roberts's beeper—beepers are commonly used by drug dealers—went off at least eight to ten times, yet Roberts did not return the calls on his car phone and answered evasively when questioned about the calls. And fourth, Larry Jones, Roberts's employee and co-defendant, told an agent that Roberts was getting clandestine shipments of precursor chemicals from Tennessee for sale to a California distributor. Thus, the government did not breach the plea agreement by not asking for a reduced sentence because the defendant breached it first by breaking the law.

C. *Ineffective assistance of counsel.*

 Whether a defendant received ineffective assistance of counsel is reviewed *de novo. United States v. Swanson,* 943 F.2d 1070, 1072 (9th Cir.1991). In order to make out an ineffective assistance of counsel claim, the appellant must show counsel's performance was deficient and the defense was thereby prejudiced. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). In order to show prejudice regarding a plea, a defendant must generally show that, absent his counsel's errors, he would have gone to trial rather than have pled guilty. *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985).

 Roberts alleges the following attorney errors: 1) his attorney did not object to the enhancements for firearms and leadership role, and 2) his attorney did not go over the presentence report with him and failed to object to errors in the report.[5] Neither of

---

**5.** Roberts makes several other arguments. First, he says *Mistretta* required a new presentence report. However, the report was prepared pursuant to the Guidelines, so this claim fails. Sec-

these things constituted ineffective assistance of counsel.

### 1. *Enhancements for firearms and leadership.*

The enhancements for both possession of firearms and Roberts's leadership role were proper, and the attorney did not err in failing to object to them. The plea agreement stated the government would not file a firearms charge based on the guns found when he was arrested, and it did not do so. However, this does not preclude the sentencing court from using the firearm possession to enhance Roberts's sentence. *United States v. Flores–Payon,* 942 F.2d 556, 561–62 (9th Cir.1991).

A defendant's role in a conspiracy is a question of fact reviewed for clear error. *See United States v. Howard,* 894 F.2d 1085, 1088 (9th Cir.1990). It was not clear error to apply the four point "leadership" enhancement. The Sentencing Guidelines provide for a four point increase in the base offense level "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a).

To decide if a person is an "organizer or leader," the court examines the following factors:

> [T]he exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the

illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1, comment. (n. 3). Here, Roberts owned Gemini Chemical, purchased the chemicals, negotiated the sale directly with the undercover agent/buyer, directed his employee to deliver the chemicals, and stood to profit the most from the transaction. On similar facts the Ninth Circuit has held a four point enhancement was appropriate. *United States v. Avila,* 905 F.2d 295, 298–99 (9th Cir.1990) (four point "leader" enhancement for defendant who had reputation as "heavy drug dealer," negotiated price, had alternative sources, dealt in large amounts, coordinated procurement and distribution).

█ The four point increase was justified because, while there were only three, not five, participants, the criminal activity was "otherwise extensive."[6] U.S.S.G. § 3B1.1. "In assessing whether an organization is 'otherwise extensive,' all persons involved during the course of the entire offense are to be considered. Thus, a fraud that involved only three participants but used the unknowing services of many outsiders could be considered extensive." U.S.S.G. § 3B1.1, comment. (n. 2). Here, there were other people who provided "unknowing services." There were four employees at Gemini Chemical who were unwittingly involved. In addition, Roberts bought chemicals from supply companies in both New Jersey and Seattle, necessarily involving people at both places.

### 2. *Failure to object to alleged inaccuracies in the presentence report.*

█ Roberts argues he received ineffective assistance of counsel because his attor-

---

ond, he says his attorney failed to file a notice of appeal after agreeing to do so. The record controverts this—the attorney only agreed to continue his representation long enough to discuss whether the defendant wished to appeal. C.R. 35 at 28. Third, Roberts claims his attorney did not know about the Sentencing Reform Act. The record also refutes this—the attorney knew Roberts's case was theoretically a Guidelines case. It so stated in the presentence report, and it was discussed at the plea hearing.

**6.** The presentence report incorrectly based its four point increase on the presence of five or more participants. However, this inaccuracy did not affect Roberts's sentence. Fed.R.Crim.P. 32(c)(3)(D). The enhancement was justified because, as discussed above, the criminal activity

was "otherwise extensive." Furthermore, even if the criminal activity was not "otherwise extensive," Roberts would still have received the statutory maximum of twenty years. Roberts clearly held enough of a leadership role to justify a two point enhancement. U.S.S.G. § 3B1.1(c); *United States v. Monroe,* 943 F.2d 1007, 1019 (9th Cir.1991) (two point enhancement appropriate where defendant exercised decisionmaking authority and had organizational role), *cert. denied,* —— U.S. ——, 112 S.Ct. 1585, 118 L.Ed.2d 304 (1992). A two point leadership enhancement would have yielded a total base offense level of 38, resulting in a guideline range of 292–365 months—still in excess of the statutory maximum of 240 months.

ney failed to go over the presentence report with him and failed to object to alleged inaccuracies in the presentence report. The merits of these claims are lacking. First, Roberts's lawyer told the court he had gone over the report "in detail" with his client. When Roberts was asked to comment at his sentencing hearing, he did not disagree with this statement.

Furthermore, the alleged inaccuracies either did not exist or, as discussed above, did not affect Roberts's sentencing. The presentence report estimated the amount of methamphetamine that could be made from the 3,550 kilograms of precursor chemicals that Roberts had purchased. Roberts raises three criticisms about this estimate. First, he says he bought the lion's share, 3,450 kilograms out of 3,550 kilograms, of phenylacetic acid before the conspiracy began, so he contends his sentence should have been based on only 100 kilograms of the chemical. However, Roberts was conspiring to manufacture and distribute methamphetamine during the time of the charged conspiracy. That he had bought the chemicals earlier is of no import.

Second, he argues phenylacetic acid was not a controlled substance at the time of his offense, and the Sentencing Guidelines did not contain a conversion table for estimating the quantity of methamphetamine from phenylacetic acid. These points are directly controverted by *United States v. Bertrand*, 926 F.2d 838, 845–47 (9th Cir.1991). While the guidelines did not provide a conversion table, they did provide for an approximation to be made. U.S.S.G. § 2D1.4, comment. (n. 2). Here, the agent's conservative estimate that one could manufacture methamphetamine equal to one fourth the quantity of precursor chemicals was satisfactory. Roberts had purchased such a huge quantity of precursor chemicals that even if one used a much lower conversion rate, one would still arrive at the highest base offense level of 36.

SENTENCE VACATED AND REMANDED.