UNITED STATES of America,
Plaintiff–Appellee,

v.

Rafael Salgado AVILA, Defendant–Appellant.

No. 95–50252.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 7, 1996.

Decided Sept. 13, 1996.

Michael J. Brennan, Manhattan Beach, CA, for defendant-appellant.

John J. Byrne, Jr. (on the briefs), and Eileen M. Decker (argued), Assistant United States Attorneys, Los Angeles, CA, for plaintiff-appellee.

Before: REINHARDT, KOZINSKI, and HAWKINS, Circuit Judges.

REINHARDT, Circuit Judge:

Rafael Salgado Avila appeals his sentence of 181 months imprisonment. Avila contends that the district court clearly erred in imposing a four-level upward adjustment to his base offense level for being an organizer or leader and in denying a two-level reduction for acceptance of responsibility. We agree with Avila as to the four-level adjustment, but disagree as to the two-level reduction. Accordingly, we vacate in part, affirm in part, and remand for resentencing.

## BACKGROUND

On August 26, 1991, a confidential informant introduced Detective Clifford Morgan, a Boise, Idaho undercover police officer, to Avila. In late August and September, Avila and Morgan discussed the possible purchase of cocaine by Morgan. In preparation for a larger transaction, they agreed that Avila would mail smaller samples to Morgan. On October 1, 1991, after completing two small transactions, Avila and Morgan planned a five-kilogram sale of cocaine for $80,000.

On October 3, Morgan flew to California from Idaho, and on October 4, he met Avila in the parking lot of the Van Nuys Post Office. After telephoning his "source," Avila told Morgan that "they ... want[ed] him to go over to their house and talk about the deal." He left the post office, drove to co-defendant Anguiano's home, and later returned with Anguiano to the post office. Avila left Anguiano in the car and spoke with Morgan, pointing out Anguiano as his source. Avila told Morgan that Anguiano did not want to sell the five kilograms at once. Instead, Anguiano wanted to sell three kilograms initially and the remaining two kilograms in a subsequent transaction. It was agreed that Avila would return later that afternoon.

After leaving the post office, Avila and Anguiano made several stops. They eventually went to Anguiano's house, where Avila received a kilogram of cocaine from co-defendant Grado. Avila left Anguiano's house, with a van driven by co-defendants Segura and Perez following,[1] and returned to the post office. He again met with Morgan and told Morgan that his source now wanted to sell the cocaine one kilogram at a time. After examining the cocaine, Morgan signalled the other officers who were standing by to arrest the suspects. The officers arrested Avila, who attempted to flee his car and tossed his gun under another car, and Segura and Perez.[2] Soon thereafter, Anguiano and Grado were arrested.

Avila was indicted on three separate charges: Count 1, conspiracy to possess cocaine with the intent to distribute, in violation of 21 U.S.C. § 846; Count 2, possession of cocaine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1); and Count 3, possession of a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c). Avila pled guilty to Count 2, and not guilty to the other two

---

1. Segura, who offered conflicting explanations for his actions, stated that he was living at Anguiano's house at the time and that he was called and instructed to follow Avila. He denied knowing that cocaine would be sold. Perez, who drove the van, said that he knew about the cocaine and that he was there to serve as a lookout. Detective Miller testified that based on his experience, Segura and Perez were acting as protection for the drugs.

2. Avila spoke to the police upon arrest and made several admissions. He admitted mailing cocaine to Morgan, and stated he received the cocaine at Anguiano's house from co-defendant Grado. He also admitted attempting to sell the kilo of cocaine to Morgan. Avila further admitted possessing a gun which he bought for his protection.

counts.[3] A jury convicted him on both Counts 1 and 3.

The district court sentenced Avila in accordance with the recommendation of the presentence report (PSR). The PSR recommended that Avila receive a four-level adjustment under section 3B1.1 for being a "leader or organizer," and that Avila not be granted a two-level reduction for acceptance of responsibility.[4] The court calculated the offense level for Counts 1 and 3 at 30. In criminal history category III, this offense level results in a guideline range of 121 to 151 months. The court imposed a 121 month term of imprisonment on Counts 1 and 3, and a mandatory consecutive 60–month term on Count 2, for a total term of 181 months.

## DISCUSSION

### 1. Organizer or Leader Enhancement

■ A district court's finding that a defendant was "an organizer or leader" is reviewed for clear error. *United States v. Ponce,* 51 F.3d 820, 826 (9th Cir.1995); *United States v. Sanchez,* 908 F.2d 1443, 1447 (9th Cir.1990).

Section 3B1.1 provides for upward adjustments based on the defendant's role in the offense. It states:

Based on the defendant's role in the offense, increase the offense level as follows:

(a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.

(b) If the defendant was a manager or supervisor (but not an organizer or leader)

and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.

(c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.

U.S.S.G. § 3B1.1 (1995).

■ For a four-point upward adjustment to be appropriate, a preponderance of the evidence must support a finding that the defendant was an organizer or leader, "not merely that the defendant was more culpable than others who participated in the crime." *United States v. Harper,* 33 F.3d 1143, 1150 (9th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 917, 130 L.Ed.2d 798 (1995). Moreover, to sustain a finding that a defendant was an organizer or a leader, "there must be evidence that the defendant 'exercised some control over others involved in the commission of the offense [or was] responsible for organizing others for the purpose of carrying out the crime.'" *Id.* at 1151 (quoting *United States v. Mares–Molina,* 913 F.2d 770, 773 (9th Cir.1990) (quoting *United States v. Fuller,* 897 F.2d 1217, 1220 (1st Cir.1990))).

■ In determining whether a defendant was an organizer or leader, as opposed to a manager or supervisor, a court should consider the following factors:

[T]he exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing

---

**3.** Although he admitted to possession of a gun, Avila pled not guilty to the gun charge because it entailed other elements that were in dispute, specifically, whether the gun was used during and in relation to a crime of violence or a drug trafficking crime. As his counsel explained, possession of the gun alone did not establish liability under § 924(c); "[t]here has to be a showing that it was used during and in relation to a crime of violence or a drug trafficking offense."

**4.** In addition to objecting to the PSR's recommendation that a four-level upward adjustment be applied and that a two-level reduction be denied, Avila objected to the proposed doubling of the mandatory minimum under 21 U.S.C. § 851. Given the district court's resolution of

the first two objections, however, this objection to the doubling of the mandatory minimum became moot. That is, a base offense level of 30 resulted in a guidelines range of 121 to 151 months, which was greater than the ten-year mandatory minimum to which Avila objected. Accordingly, the district court never ruled on the issue, finding that it had been rendered moot by the decision to apply the four-level adjustment and deny the two-level reduction. In light of our decision to vacate the upward adjustment, the district court will now have to address the issue of the doubling of the mandatory minimum, for on resentencing the guideline range minimum will be less than ten years.

the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. U.S.S.G. § 3B1.1, Application Note 4; *Ponce,* 51 F.3d at 827; *Mares–Molina,* 913 F.2d at 773. As we said in *Mares–Molina,* "some degree of control or organizational authority over others is required...." 913 F.2d at 773.

■ The district court adopted the PSR's recommendation regarding Avila's role in the offense. The PSR stated:

A review of the investigation reports[ ] indicates the defendant was the sole negotiator with the confidential informant, and undercover detective, regarding the quantity and price of the cocaine. He obtained and mailed samples of cocaine via Express Mail to the undercover detective. He negotiated a $1,000 fee for each kilogram of cocaine he was to deliver. He was the only member of the overall conspiracy who met face to face with the undercover detective, drove to various locations to obtain the cocaine, then transported it to the predetermined drug transaction site. He is the defendant who accepted the armed assistance (as lookouts and security) from his co-conspirators, as well as armed himself during the October 4, 1991, drug transaction. The above activities clearly distinguish the defendant as an organizer/leader pursuant to Section 3B1.1(a).... In lieu of [sic] the above stated involvement, a four-level increase has been applied as authorized by Section 3B1.1(a).

PSR ¶ 44.[5]

Avila does not dispute the fact that he was the go-between for the buyer and the seller,

that he obtained and mailed samples of cocaine, that he negotiated a $1,000 personal fee for each kilogram of cocaine, that he was the only person to meet with the undercover officer, or that he accepted armed assistance. He contends, however, that these facts "do not demonstrate any organizational or leadership role o[ver] others in the conspiracy." The government, relying on *United States v. Varela,* 993 F.2d 686 (9th Cir.), *cert. denied,* 510 U.S. 884, 114 S.Ct. 232, 126 L.Ed.2d 186 (1993), and *United States v. Barnes,* 993 F.2d 680 (9th Cir.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 96, 130 L.Ed.2d 46 (1994), contends that Avila was an organizer or leader because he "organized the actions of his co-defendants in delivering the drugs." We agree with Avila.

The cases in which this court has upheld a four-level upward adjustment support Avila's contention that the finding that he was an organizer or leader is clearly erroneous. Those cases involved defendants who, the evidence showed, exercised some degree of control or organizational authority over others. *See Ponce,* 51 F.3d at 827; *United States v. Roberts,* 5 F.3d 365, 371 (9th Cir. 1993); *Barnes,* 993 F.2d at 685; *United States v. Mullins,* 992 F.2d 1472, 1479 (9th Cir.), *cert. denied,* 510 U.S. 994, 114 S.Ct. 556, 126 L.Ed.2d 457 (1993); *United States v. Avila,* 905 F.2d 295, 298–99 (9th Cir.1990). Here, there is no evidence in the record that Avila exercised any control or organizational authority over others and thus no factual basis for characterizing him as an organizer or leader.[6]

---

5. The statement that Avila negotiated the price of the cocaine is ambiguous. As we note later, Detective Morgan's testimony makes clear that Avila only relayed the price set by the supplier.

6. *United States v. Varela,* 993 F.2d 686 (9th Cir. 1993), on which the government relies, decides a question involving a two-level upward adjustment. There, we stated than an enhancement under § 3B1.1(c), rather than § 3B1.1(a), "may be proper where ... a defendant organizes others in the commission of the criminal activity even though he does not retain a supervisory role over the other participants." *Id.* at 691. Although the term "organizer or leader" is the same in both sections, § 3B1.1(c), unlike § 3B1.1(a), draws no distinction between an or-

ganizer or leader and a manager or supervisor. However appropriate it may be to find a person who has exercised no authority over others to warrant a two-level departure for being an organizer or leader or manager or supervisor, *cf. United States v. Fuller,* 897 F.2d 1217, 1220 (1st Cir.1990) (cited with approval in *Mares–Molina,* 913 F.2d at 773), it is not appropriate in the context of four-level adjustments, where precisely what distinguishes a leader or an organizer from a manager or supervisor is control or authority over others. *Cf.* U.S.S.G. § 3B1.1, Background Note ("In relatively small criminal enterprises that are not otherwise to be considered as extensive in scope or planning or preparation, the distinction between organization and leadership, and that of management or supervision, is of less

There is no evidence that Avila coordinated or oversaw the procurement or distribution of drugs. *Cf. Ponce,* 51 F.3d at 827 (finding organizer or leader enhancement appropriate where defendant oversaw procurement and distribution of "colossal" quantities of cocaine); *Avila,* 905 F.2d at 299 (finding enhancement proper where defendant, who was a "heavy drug dealer," procured and distributed cocaine and heroin from numerous suppliers). Although he was the sole contact between buyer and seller, he did not independently negotiate the key element of the transaction: the price of the cocaine. *Cf. Barnes,* 993 F.2d at 685 (upholding enhancement where defendant, among other things, fixed the price of the cocaine); *Avila,* 905 F.2d at 299. Rather, according to the undisputed evidence, he merely relayed the price of the cocaine, as set by his supplier, to the buyer.[7]

Although he was the sole contact between buyer and seller, the evidence reveals that Avila lacked decision-making authority. *Cf. Ponce,* 51 F.3d at 827. Indeed, others not only set the price but also controlled the scope of the transaction, directing that it be changed from a single purchase of five kilo-

grams to five separate sales. While Avila negotiated a $1,000 fee for himself, he did not stand to profit the most from the transaction. *Cf.* U.S.S.G. § 3B1.1, Background Note (stating that a person in a "supervisory or managerial role ... tend[s] to profit more from [the offense] and present[s] a greater danger to the public and/or are more likely to recidivate"); *Roberts,* 5 F.3d at 371 (finding enhancement proper in part because defendant stood to profit most from the transaction). Finally, the record does not contain any evidence that Avila exercised authority over any of the other participants. *Cf. Roberts,* 5 F.3d at 371 (finding enhancement appropriate where defendant gave orders to another person); *Barnes,* 993 F.2d at 685 (upholding enhancement where defendant, among other things, admitted exercising authority over one other participant). The fact that Avila was accompanied by two other participants in the conspiracy, in the absence of any evidence that he exercised control or authority over them, does not warrant characterizing him as an organizer or leader.[8]

The government contends, nonetheless, that an organizer or leader enhancement was

---

significance than in larger enterprises that tend to have clearly delineated divisions of responsibility.").

Moreover, *Varela* is distinguishable on its facts. Varela coordinated, negotiated, and transacted deals involving various suppliers and undercover agents. He not only located suppliers for methamphetamine and cocaine but also for weapons. We found his conduct analogous to that of the defendant in *Avila,* who negotiated the price of the drugs, had a reputation as a "heavy drug dealer," handled negotiations involving large amounts of drugs and money, and had a number of sources for the drugs. As we explain more fully in the text, we find that Avila's conduct cannot be analogized to that of the defendants in *Varela* or *Avila* because Avila did not exhibit any control or authority over others.

7. As evidenced by the following colloquy, Detective Morgan testified that Avila did not negotiate the price of the cocaine, but rather merely passed on the price set by his source:

Q: During that conversation Mr. Avila says "Okay. The guy [the source]—the guy I just talked to him. He told me that if you're going to take five all you got to bring is eighty." What is meant by that?
A: In our first conversation earlier in the day, Mr. Avila told me that he believed the price was going to be somewhere around seventeen

thousand, five hundred dollars ... or eighteen thousand dollars ... for a kilo of cocaine. I'd requested that he *check and find out from his source* what the price would be if I bought five kilos.

(Emphasis added).

8. There is no evidence in the record that Avila had control or authority over Segura or Perez. They were sent by the supplier who was undoubtedly concerned with the money or the drugs. The district court recognized this fact, stating that "[w]hether it was to ride bodyguard to protect Mr. Anguiano against the money disappearing or whether to ride bodyguard against a criminal buyer holding Mr. Avila up is not clear." The PSR acknowledges that Perez and Segura were watching the transaction at the behest of others. It states that "[Avila] *accepted* the armed assistance [of Perez and Segura]." (Emphasis added).

There is also no suggestion that Avila exercised control over Grado and Anguiano. That Avila received cocaine from Grado does not suggest that he exercised any authority or control relative to him. The contact Avila had with Anguiano, moreover, suggests that Anguiano exercised control over Avila. If Anguiano was in fact the supplier, then it was he who controlled the size of the transaction and set the price.

appropriate because Avila organized his co-defendants. We reject this contention. Avila may have, acting on behalf of the seller, arranged the transaction, which may make him more culpable than some of the other defendants, but that alone is not enough to justify an upward adjustment, *Harper,* 33 F.3d at 1150; he must have exercised organizational authority or control over others. *See id.* at 1150–51; *Mares–Molina,* 913 F.2d at 773. There is simply no evidence in the record before us that he did so. To uphold the government's position would be to extend improperly the application of the guidelines and to permit the imposition of four-level adjustments on those whose role in the offense, however visible, cannot constitute an aggravating factor under our caselaw.

### 2. Acceptance of Responsibility

■ Avila also contends that the district court erred in failing to grant him a two-level reduction for acceptance of responsibility. The government asserts that Avila was not entitled to such a reduction because he (1) pled guilty only to Count 2 and proceeded to trial on Counts 1 and 3; (2) repudiated his post-arrest statement and denied the participation of his co-conspirators in his statement to the probation officer; and (3) claimed that his confession was fabricated to the extent it described the roles of the other participants. We agree, essentially on the basis of the government's first contention.

Avila's reliance on *United States v. McKinney,* 15 F.3d 849 (9th Cir.1994), is misplaced. *McKinney* held that a guilty plea is not a prerequisite to a § 3E1.1 reduction. *Id.* at 852. The court found a reduction justified because McKinney had expressed remorse immediately after his arrest, in his confession statement, and at the sentencing hearing; had assisted the authorities by confessing to the robbery and explaining how he acquired the gun used in the robbery; and had attempted to plead "to charges 'at the core of the government's case.'" *Id.* at 853–54. Here, Avila disputed his involvement in the conspiracy. Moreover, in his statement to the probation officer, he denied his earlier statement that he had received the cocaine from his co-defendants. This is clearly inconsistent with acceptance of responsibility for his involvement in the conspiracy. Accordingly, we affirm the district court's denial of the two-level reduction.

### CONCLUSION

We conclude that the district court's finding that Avila was an organizer or leader was clearly erroneous. In the absence of sufficient evidence that he exercised control or organizational authority over others, Avila's role in arranging the illegal transaction does not make him an organizer or leader and does not constitute an aggravating factor warranting a four-level upward adjustment.

AFFIRMED in part, REVERSED in part, and REMANDED for resentencing.