**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 12-10110 |
| Plaintiff - Appellee, | D.C. No. 2:07-cr-00432-EJG-3 |
| v. | |
| GABRIEL RICHARD VIRAMONTES, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Eastern District of California
Edward J. Garcia, Senior District Judge, Presiding

Argued and Submitted March 10, 2014
San Francisco, California

Before: NOONAN, THOMAS, and BERZON, Circuit Judges.

Gabriel Richard Viramontes appeals from his conviction following a jury

trial on six counts of bank fraud and seven counts of mail fraud, and from the fifty-

seven month prison term imposed by the district court.

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

**1.** The district court did not err by refusing to instruct the jury that a defendant's mere presence at the scene of a crime or knowledge that a crime is being committed is not sufficient to establish that the defendant committed the crime. "If the government's case is based on more than just a defendant's presence, and the jury is properly instructed on all elements of the crime, then a 'mere presence' instruction is unnecessary." *United States v. Negrete-Gonzales*, 966 F.2d 1277, 1282 (9th Cir. 1992). Viramontes has not disputed that the judge properly instructed the jury on the elements of the charged crimes. And the government presented evidence that Viramontes's involvement in the crimes went beyond his presence at meetings where Martin pitched the scheme and knowledge of Martin's fraud and misrepresentations. Among other things, the government offered evidence that: Viramontes taught Martin how to carry out the scheme, including how to make fraudulent representations to lenders to obtain full financing for home purchases; Viramontes actively pitched the scheme to investors, including to Oliveras; and Viramontes actively participated in the recruitment of a new broker, Gallo, and explained the scheme to him, including how fraudulently to obtain multiple full-financing home loans with the same borrower in the same month.

Accordingly, the district court was not required to give a "mere presence" instruction.

**2.** The district court properly admitted the evidence regarding the loan transaction involving Ben Viramontes under Federal Rule of Evidence 404(b), because it tended to show Viramontes's knowledge and intent in committing the charged crimes. The Ben Viramontes loan transaction involved similar misrepresentations to those in the charged offenses— for instance, that Ben Viramontes would live in the purchased house. As in the charged offenses, the misrepresentations were made to obtain a loan with one-hundred-percent financing. And, as in the charged offenses, Viramontes approached the straw borrower because the borrower had a good credit score, which Viramontes could use to qualify for the mortgage.

In addition, the evidence was properly admitted under Federal Rule of Evidence 403. It was highly probative on the issues of intent and knowledge, considerations outweighing the prejudice alleged by Viramontes.

**3.** Viewing the evidence in the light most favorable to the prosecution, *United States v. Bennett*, 621 F.3d 1131, 1135 (9th Cir. 2010), the government offered proof sufficient to support conviction on the bank fraud charges. There was sufficient evidence for the jury to conclude that Viramontes had the requisite

3

intent to defraud banks by making false statements in the straw buyers' loan applications to qualify them for a loan without a down payment. That evidence included: Martin's testimony that Viramontes had the original idea for the scheme and explained to him how to get multiple properties without paying a down payment; Martin's testimony that when he and Viramontes were employed at Ameriquest, loan officers there were trained that one hundred percent financing loans were only available for borrowers seeking to purchase primary residences, not investment properties; testimony by Martin and Gallo that Viramontes explained to Gallo "how to fund multiple loans in the same month with the same borrower" in a way that the banks would be unaware of the multiplicity "until essentially it is too late," including that a "a buyer would be able to purchase multiple properties" because "[w]e would classify them as owner-occupied to get the 100 percent financing"; Ben Viramontes's testimony that Viramontes had Ben sign the loan documents for the purchase of Viramontes's own home using a one hundred percent financing loan; and testimony supporting the inference that Viramontes knew that the straw buyers were not going to live in the houses purchased.

**4.** There was also sufficient evidence submitted to support conviction on the mail fraud charges. The charged mailings were "incident to an essential part of the

4

scheme, or a step in [the] plot." *Schmuck v. United States*, 489 U.S. 705, 710-11 (1989) (internal quotation marks and citations omitted). Each mailing was integral to the closing of escrow on the homes purchased by the straw buyers. It was only after escrow closed that Viramontes and the others could receive their profits.

**5.** The district court properly imposed a four-level increase in Viramontes's offense level on the basis that he "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). The district court's finding that Viramontes was a leader or organizer was supported by a preponderance of the evidence. *United States v. Avila*, 95 F.3d 887, 889 (9th Cir. 1996). This evidence showed not only that Viramontes was "more culpable than others who participated in the crime," but also that he "was responsible for organizing others for the purposes of carrying out the crime." *Id.* (internal quotation marks and citation omitted). There was evidence in the record that, in addition to proposing the scheme, Viramontes taught it to Martin, arranged for Martin, Fellini, and Viramontes to work together, and participated in seeking a broker, Gallo, as well as some of the straw buyers. Viramontes was responsible for recruiting and managing renters — although he did not actually carry out this responsibility — and he placated the straw buyers to keep the scheme going. There was, in addition, testimony that Viramontes and Martin equally shared the

bulk of the proceeds of the scheme, while their co-perpetrators received significantly less. Although Martin was also a leader or organizer of the scheme, "[t]here can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy." U.S.S.G. § 3B1.1, Application Note 4.

Sufficient evidence also was introduced to support the conclusion that there were at least five participants in the scheme. Viramontes's sole objection before the district court in this regard was that, because Huang and Warehime were not criminally charged, they were not coparticipants in the scheme; he did not challenge the factual findings in the presentence report about Huang and Warehime's participation. And a person need not be prosecuted to be a participant. *See* U.S.S.G. § 3B1.1, Application Note 1; *see also United States v. Hanousek*, 176 F.3d 1116, 1125 (9th Cir. 1999). The district court was not required to make specific findings as to this legal dispute. *See United States v. Petri*, 731 F.3d 833, 841 (9th Cir. 2013), *cert. denied*, 134 S. Ct. 681 (2013).

Moreover, Viramontes has not disputed that at least he, Martin, Fellini, and Gallo were participants. There was evidence introduced that Warehime and Huang gave Viramontes and Martin illegal kickbacks and that at least Warehime knew that the kickbacks were illegal. Also, both Warehime and Huang prepared and

6

signed purchase agreements indicating that the straw buyers would occupy the properties, even though they each knew that the straw buyers were buying multiple properties and would not move into them. Accordingly, these two individuals knowingly abetted the criminal conduct at issue here and qualified as participants. *See United States v. Smith*, 719 F.3d 1120, 1126 (9th Cir. 2013).

**AFFIRMED.**