**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

JOSEPH LAVERN HARRIS,
*Defendant-Appellant*.

No. 19-30202

D.C. No.
4:18-cr-00103-BLW-1

OPINION

Appeal from the United States District Court
for the District of Idaho
B. Lynn Winmill, Chief District Judge, Presiding

Argued and Submitted February 3, 2021
Seattle, Washington

Filed June 9, 2021

Before: Susan P. Graber, M. Margaret McKeown, and
Richard A. Paez, Circuit Judges.

Opinion by Judge McKeown;
Dissent by Judge Graber

## SUMMARY[*]

### Criminal Law

The panel vacated Joseph Harris's sentence, and remanded for resentencing, in a case in which Harris and Elizabeth Evans each pled guilty to sexually exploiting Evans's minor daughter, "CV."

The panel held that because there is no evidence that Harris exercised control over Evans, the district court abused its discretion in applying a leadership enhancement under U.S.S.G. § 3B1.1(c). The panel wrote that Harris's making lists of people, including CV, with whom he wanted to sleep, was at most analogous to making a suggestion, which the Sentencing Guidelines make clear is not enough for application of the enhancement. The panel wrote that even if writing the lists could be characterized as facilitation, that, too, falls short of what the enhancement requires, as does playing a central role in the offense.

The panel held that the district court also erred in applying a "guardian" enhancement under U.S.S.G. § 2G2.1(b)(5). The panel observed that Harris—who was not CV's parent, didn't act as her legal guardian, and knew CV for less than two months—was never entrusted with parent-like authority and never acted *in loco parentis*. The panel observed that Harris was never even a temporary caretaker or babysitter, that Evans did not let him be home alone with CV, and that CV's reference to him as "dad" is

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

not indicative of the actual relationship between them. The panel emphasized that the law looks to parental authority, not proximity.

Dissenting, Judge Graber wrote that the district court's findings in support of the enhancements are neither illogical nor implausible, and the record provides sufficient support in inferences that may be drawn from the facts to render the findings not clearly erroneous.

## COUNSEL

Matthew L. Kinghorn (argued), Federal Defender Services of Idaho, Pocatello, Idaho, for Defendant-Appellant.

John C. Shirts (argued), Assistant United States Attorney; Bart M. Davis, United States Attorney; United States Attorney's Office, Pocatello, Idaho; for Plaintiff-Appellee.

## OPINION

McKEOWN, Circuit Judge:

This appeal tests the limits of two sentencing enhancements. Joseph Harris and Elizabeth Evans each pled guilty to sexually exploiting Evans's minor daughter, "CV." At Harris's sentencing, the district court applied two enhancements: one for his alleged role as a leader and the other for his alleged role as a guardian to CV. In doing so, the district court exceeded the bounds of the enhancements. We vacate the sentence and remand for resentencing.

## BACKGROUND

Harris and Evans became romantically involved in December 2017 and moved in together in January 2018. The Jefferson County Child Protective Services ("CPS") visited their home in February 2018, acting on an anonymous report of possible child abuse. The report proved true: when CPS spoke with CV, she reported sexual abuse by Harris, whom she referred to as "dad." The police found photographs of the abuse, one of which Evans admitted taking. The police also recovered handwritten notes that listed people, including CV, with whom Harris and Evans wished to have sexual intercourse.

When asked whose idea the abuse was, Evans did not pin the blame on Harris. She told the police that the two of them had "discussed it" and that Harris "did not pressure her to participate in the abuse of her daughter." She also reported that she never left CV home alone with Harris.

In the past sixteen years, Harris has been evaluated six times with the Wechsler Adult Intelligence Scale. His results range from extremely low to borderline-range intelligence. An evaluation prior to the district court proceedings determined that he has a mild intellectual disability and a personality disorder.

At his sentencing, Harris objected to the proposed leadership and guardian enhancements. Without the enhancements, Harris's applicable sentencing range was 210 to 262 months. But the district court applied both enhancements, resulting in a range of 324 to 360 months. Harris was sentenced to 300 months.

## ANALYSIS

We review the district court's factual findings for clear error, its construction of the United States Sentencing Guidelines de novo, and its application of the Guidelines to the facts for abuse of discretion. *United States v. Gasca-Ruiz*, 852 F.3d 1167, 1170 (9th Cir. 2017) (en banc).

### I. THE "LEADER" ENHANCEMENT UNDER U.S.S.G. § 3B1.1(C)

The Guidelines allow for a two-level enhancement if the defendant was "an organizer, leader, manager, or supervisor in any criminal activity." U.S.S.G. § 3B1.1(c). Harris was neither a manager nor a supervisor, so we focus on whether he was an "organizer" or a "leader." To qualify as such, Harris must have exercised "control over others."[1] *United States v. Avila*, 95 F.3d 887, 892 (9th Cir. 1996).

The practical dimensions of what it means to exercise "control over others" are well illustrated by *United States v. Avila*. Avila was the sole go-between for a buyer and a seller in a drug sale. *Id.* at 891. Even though he obtained and mailed the cocaine, was the only person who met with the undercover officer, and received armed assistance from co-conspirators, we held that the enhancement did not apply because he did not exercise "control over others." *Id.* at 890–92. Similarly, in *United States v. Whitney*, we held that the enhancement was not warranted because there was no demonstration of control over others, even though the defendant "supplied [a co-conspirator] with tax forms and

---

[1] The enhancement may also apply if the defendant exercises "organizational authority" over others, but because there was no criminal organization here, we focus only on the "control over others" requirement. *Avila*, 95 F.3d at 892.

information on filing false returns." 673 F.3d 965, 969, 975–76 (9th Cir. 2012).

As in *Avila* and *Whitney*, "there is no evidence in the record that [Harris] exercised any control" over others. *Avila*, 95 F.3d at 890. The district court relied on "the suggestion" that Harris "directed [Evans] to participate with him in this conduct by taking photographs of it." But that suggestion is unsupported by the record. Evans took at least one photograph, but nothing in the record supports that Harris directed her to do so. Not even an inference supports direction by Harris. By concluding that Harris directed Evans, the district court clearly erred.

The district court also found that Harris demonstrated control by making lists of people, including CV, with whom he wanted to sleep. As the district court put it, Harris was "directing or influencing Ms. Evans in some of her other behavior, as well: sitting down and writing lists of deviant sexual acts and partners." But under the Guidelines and our precedent, these lists do not establish control.

Evans participated in making the lists, but Harris did not direct her to do so. Making a list is at most analogous to making a suggestion. Though there may be some direction inherent in a suggestion, the Guidelines are clear that a suggestion is not enough for application of the enhancement. U.S.S.G. § 3B1.1 cmt. n.4. ("[T]he adjustment does not apply to a defendant who merely suggests committing the offense.").

Even if writing these lists could be characterized as facilitation, that, too, falls short of what the enhancement requires. In *United States v. Holden*, for example, we held that the enhancement did not apply because the defendant's act of instructing a co-conspirator on how to send funds to

accounts abroad was "best characterized as facilitation" and did not demonstrate control over others. 897 F.3d 1057, 1065 (9th Cir. 2018).

The lists and notes in this case fall especially short of establishing leadership because Evans also made her own lists, the two shared their lists, and Evans stated that Harris "did not pressure her to participate in the abuse of her daughter." Fundamentally, the lists and notes were expressions of Harris's desires. They included no demand, threat, or other demonstration of control over Evans. Thus, writing a list of what Harris wanted does not establish that he had influence or control over Evans.

Harris did play a central role in the offense by committing the offense himself and by working with Evans as she committed the offense, but playing a central role is not sufficient to trigger the enhancement. *See Whitney*, 673 F.3d at 975 ("[E]ven a defendant with an important role in an offense cannot receive an enhancement unless there is also a showing that the defendant had control over others."). Indeed, "we do not apply the enhancement merely because a defendant's important role makes him integral to the success of the criminal enterprise and gives him a high degree of culpability." *United States v. Doe*, 778 F.3d 814, 825 (9th Cir. 2015) (internal quotations omitted).

Our precedent is clear that, without "control over others," a suggestion is not leadership, facilitation is not leadership, and playing an important role is not leadership. *Avila*, 95 F.3d at 892. Because there is no evidence that Harris exercised control over Evans, the district court abused its discretion in applying the leadership enhancement. *See Whitney*, 673 F.3d at 976 ("There must . . . be evidence in the record that would support the conclusion that the defendant exercised the necessary level of control.").

## II.  THE "GUARDIAN" ENHANCEMENT UNDER U.S.S.G. § 2G2.1(B)(5)

The Guidelines also allow for a two-level enhancement if the defendant "was a parent, relative, or legal guardian of the minor involved in the offense, or if the minor was otherwise in the custody, care, or supervisory control of the defendant." U.S.S.G. § 2G2.1(b)(5).[2] The explanatory notes add that the enhancement:

> is intended to have broad application and includes offenses involving a minor entrusted to the defendant, whether temporarily or permanently. For example, teachers, day care providers, baby-sitters, or other temporary caretakers are among those who would be subject to this enhancement. U.S.S.G. § 2G2.1 cmt. n.5(A).

Harris was not CV's parent, nor did he act as her legal guardian. The crux of the enhancement otherwise turns on whether the minor was entrusted to the defendant's care and on whether the defendant acted "*in loco parentis*"—in the place of a parent. *United States v. Swank*, 676 F.3d 919, 923 (9th Cir. 2012). Acting "in the place of a parent" could take many forms but our case law focuses specifically on whether the defendant had "parent-like *authority*." *United States v.*

---

[2] Three separate sentencing Guidelines relating to abuse of minors use the same language in their respective guardian enhancements. U.S.S.G. § 2G2.1(b)(5) (allowing the enhancement when the victim was "in the custody, care, or supervisory control of the defendant"); U.S.S.G. § 2A3.1(b)(3) (same); U.S.S.G. § 2G1.3(b)(1) (same). Because the language is identical, we interpret the principles announced for each as applicable to the others.

*Brooks*, 610 F.3d 1186, 1201 (9th Cir. 2010) (emphasis added).

The Eighth Circuit's decision in *United States v. Blue* is instructive in understanding the enhancement. 255 F.3d 609 (8th Cir. 2001). There, the defendant had lived with the minor and the minor's mother for six months and considered himself to be the grandfather. *Id.* at 614. At a gathering at the minor's house, the defendant abused the minor in the bathroom while the mother was asleep. *Id.* The court held that the enhancement did not apply because the government failed to establish that the mother "transferred care to" the defendant and thus failed to establish that the minor was "entrusted to" the defendant. *Id.* at 614–15. Instead, the defendant "simply took advantage of an opportunity when the mother could not protect her child." *United States v. Carson*, 539 F.3d 611, 612 (7th Cir. 2008) (describing *Blue*).

Parent-like authority can be assessed by asking whether it would have been the defendant who "would have taken [the minor] to the emergency room, would have signed the applicable forms, and would have requested for [the minor] to receive treatment." *United States v. Alfaro*, 555 F.3d 496, 498 (5th Cir. 2009). This heuristic illuminates the critical distinction between mere presence that is common in many relationships, and the parent-like authority that is necessary for application of the enhancement. Consistent with this distinction, the cases where we have affirmed the enhancement typically involve a minor who was left alone under the care of the defendant. *See e.g.*, *Swank*, 676 F.3d at 919 (affirming the application of the enhancement where the defendant and his wife jointly agreed to take care of the minor while the minor's mother was out of town); *United States v. Castro-Romero*, 964 F.2d 942, 944 (9th Cir. 1992) (affirming application of the enhancement where the

defendant was married to the minor's mom, present at the minor's birth, lived with the minor, and would stay at home alone with the minor).

In applying the enhancement, the district court relied on two facts: Harris lived with CV for "five to eight weeks," and CV called Harris "dad" on at least one occasion. Based on these limited facts, the district court concluded that there was "enough of a trust and supervision relationship with [CV] as to justify the imposition of the enhancement."

The district court's conclusion is inconsistent with the plain language of the enhancement, the explanatory notes, and our case law. Harris was never entrusted with parent-like authority and never acted *in loco parentis*. Here, as in *Blue*, Harris was never given custody or supervisory control of CV. That differentiates Harris's role from that of "teachers, day care providers, baby-sitters, or other temporary caretakers." U.S.S.G. § 2G2.1 cmt. n.5(A). Significantly, Harris was never even a temporary caretaker or babysitter and Evans did not let him be home alone with CV. Harris knew CV for less than two months and her reference to him as "dad" is not indicative of the actual relationship between them. Harris was proximate to CV, but the law looks to parental authority, not proximity. The absence of any parental authority or control dooms the guardian enhancement both factually and as a matter of law.

## CONCLUSION

Because the district court erred in applying both enhancements and we cannot say that the court would come to the same conclusions given the proper scope of the enhancements, we vacate and remand for re-sentencing.

*United States v. Flores*, 725 F.3d 1028, 1042 (9th Cir. 2013).**[3]**

**VACATED          AND          REMANDED          FOR RESENTENCING.**

GRABER, Circuit Judge, dissenting:

I respectfully dissent.

We review for clear error the district court's findings that Defendant was a "guardian" of his victim, U.S. Sent'g Guidelines Manual § 2G2.1(b)(5), and a "leader" or "organizer," *id.* § 3B1.1(c). *See United States v. Whitney*, 673 F.3d 965, 974–75 (9th Cir. 2012) (holding that we review for clear error a finding of "leadership"). In my view, the district court's findings are neither illogical nor implausible, and the record provides sufficient "support in inferences that may be drawn from the facts" to render the findings not clearly erroneous. *See United States v. Christensen*, 828 F.3d 763, 779 (9th Cir. 2015) ("A finding of fact is clearly erroneous only where it is '(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record.'" (citation omitted)). "Clear error review is deferential, and '[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.'" *Id.* (alteration in original) (quoting *United States v. Working*, 224 F.3d 1093, 1102 (9th Cir. 2000) (en banc)). Under those standards, both findings by the district court are permissible.

---

**[3]** Harris also challenges his 300-month sentence as substantively unreasonable, but because he will be resentenced, we do not decide this issue.

A. *Guardian*

In applying the enhancement under § 2G2.1(b)(5), the district court expressly relied on the facts that Defendant had resided with the victim and her mother for several weeks and that the victim called Defendant "dad." We are not limited to considering only those facts; we may affirm for any reason supported by the record. *Whitney*, 673 F.3d at 976. Beyond the facts that the district court cited specifically, we know, from sealed materials, that Defendant was left alone with the victim more than once.[1] In addition, when people live together, it is reasonable to infer that the non-parent at times is "entrusted," § 2G2.1 cmt. n.5(A)., with a child's care, even if not for long periods of time—for example, when the parent is showering or preparing a meal.

To be sure, if the non-parent is present in the home only briefly (say, for a weekend), the relationship would be too minimal to support this enhancement even if the non-parent is left alone with the victim at times. I would not draw a bright line, but here, the length of the cohabitation in combination with the child's reference to Defendant as "dad" are sufficient to support application of the enhancement.

As explained in § 2G2.1(b)(5)'s comments, the enhancement "is intended to have broad application." *Id.* Temporary supervisory control may be inferred from the circumstances. The enhancement applies even if the defendant's supervision of the child amounts to "peripheral or transitory custody" and even if there is no legal

---

[1] I have filed a sealed version of this dissent that references those materials.

relationship between the parties. *United States v. Wright*, 540 F.3d 833, 846 (8th Cir. 2008) (citations omitted).

In my view, *United States v. Blue*, 255 F.3d 609 (8th Cir. 2001) (per curiam), is distinguishable. Among other things, the Eighth Circuit relied on the absence of "any evidence that the victim trusted Blue or perceived him as his grandfather." *Id.* at 615. By contrast, here, the victim referred to Defendant as "dad." The *Blue* court also relied on the absence of evidence that the defendant there "had greater access to the victim because of his relationship with the child's grandmother." *Id.* Here, Defendant did have greater access to the victim because he lived with the victim's mother. The Eighth Circuit itself has distinguished *Blue* in a situation in which, among other factors, the defendant lived with the victims and there was evidence that the victims considered the defendant to be a "big brother." *Wright*, 540 F.3d at 846. Those facts, absent in *Blue*, are present here.

B. *Organizer*

Although a defendant cannot receive a leadership enhancement merely by playing an important role in an offense or by suggesting that the offense be committed, Defendant qualifies for the two-level enhancement if he was an "organizer." § 3B1.1(c). "A defendant 'organizes' other participants if he has 'the necessary influence and ability to coordinate the[ir] behavior . . . so as to achieve the desired criminal result[s].'" *United States v. Holden*, 908 F.3d 395, 402 (9th Cir. 2018) (alterations in original) (quoting *United States v. Doe*, 778 F.3d 814, 826 (9th Cir. 2015)). A defendant can "organize" a single codefendant. *Id.*

At the outset, the district court could have inferred that it was Defendant's idea to sexually abuse CV. He acknowledged that he wanted to have sex with the child.

Sealed materials buttress that inference further. Those materials also permit the inference that Defendant influenced the mother to allow him to abuse the victim and thus organized and influenced her participation in the offense. The district court did not clearly err when it declined to take Evans' claim that Defendant "did not pressure her" at face value.

Similarly, the sealed materials permit the logical inference that Defendant directed Evans' participation in "writing lists of deviant sexual acts and partners." I disagree with the majority opinion's conclusion that writing a list "is at most analogous to making a suggestion." A list is an act of organization. *See List*, *Dictionary.com*, https://www.dictionary.com/browse/list (last visited May 25, 2021) (defining "list" as "a series of names or other items written or printed together *in a meaningful grouping or sequence* so as to constitute a record" (emphasis added)).

I do not doubt that the majority's interpretation of the facts is a reasonable one. But that is not the question that we must answer. As noted above, we must uphold the district court's findings unless they are clearly erroneous, and the existence of an alternative view does not make findings clearly erroneous. *Christensen*, 828 F.3d at 779.

For these reasons, I respectfully dissent. I would affirm the sentence.